69 P.3d 29

STATE of Arizona ex rel. The ARIZONA DEPARTMENT OF REVENUE, Plaintiff–Appellant,

v.

CAPITOL CASTINGS, INC., Defendant–Appellee.

State of Arizona ex rel. The Arizona Department of Revenue, Plaintiff–Appellee,

v.

Capitol Castings, Inc., Defendant–Appellant.

Nos. 1 CA–TX 01–0007, 1 CA–TX 02–0014.

Court of Appeals of Arizona, Division 1, Department T.

May 15, 2003.

Terry Goddard, Arizona Attorney General By Sara D. Branscum, Assistant Attorney General, Phoenix, Attorneys for Arizona Department of Revenue.

Snell & Wilmer L.L.P., By Barbara J. Dawson, Martha E. Gibbs and Danielle J. Malody, Phoenix, Attorneys for Capitol Castings, Inc.

Gallagher & Kennedy, P.A., By Steven R. Partridge, Phoenix, Attorneys for Amicus Curiae Arizona Tax Research Association.

## OPINION

EHRLICH, Judge.

¶ 1 These consolidated appeals arise from tax-court proceedings conducted after this court issued its opinion and mandate in *State*

*ex rel. Arizona Department of Revenue v. Capitol Castings, Inc.,* 193 Ariz. 89, 970 P.2d 443 (App.1998)(*"Capitol Castings I "*). The Arizona Department of Revenue ("ADOR") has appealed from an order granting Capitol Castings ("Capitol") relief from the judgment entered on this court's mandate. The order was an acknowledgment of post-mandate amendments to Arizona Revised Statutes section ("A.R.S. § "). 42–5159(C)(1)(Supp.2002) adopted by 1999 Arizona Sessions Laws, Chapter 153, Section 2; the amendments rendered subsection (C) retroactively effective to taxable periods beginning May 19, 1977. *See* 1999 Ariz. Sess. Laws, ch. 153, § 3(A).

¶ 2 The appeal was suspended, however, while the tax court considered motions for summary judgment filed by Capitol and ADOR. The court granted summary judgment for ADOR, determining that the materials that Capitol used to make molds for casting steel grinding balls and other custom items used in the mining industry did not qualify for the "machinery" or "equipment" tax exemption provided by A.R.S. § 42–5159(B)(1). Capitol's appeal from that judgment was consolidated with ADOR's appeal. The appeals present the following issues:

1. Whether the tax court abused its discretion in vacating the judgment on mandate based on the amendment to A.R.S. § 42–5159(C)(1), and

2. Whether the tax court erred in determining that the materials that Capitol used to make molds for grinding balls and other custom castings were not "machinery" or "equipment" and therefore not exempt from use taxation pursuant to A.R.S. § 42–5159(B)(1).

¶ 3 The materials whose taxable status is at issue include the sand and other components that Capitol purchased during the audit period for constructing molds for casting steel grinding balls and other custom items. The materials also include lime and cement that Capitol used to neutralize the noxious fumes generated in processing the castings and refractory materials that it used to protect its molds from the intense heat of molten metal.

¶ 4 In *Capitol Castings I,* this court overruled *Arizona Department of Revenue v. Cyprus Sierrita Corp.,* 177 Ariz. 301, 867 P.2d 871 (Tax Ct.1994), in which the tax court had held that chemicals used to extract cathode copper from copper ore constituted tax-exempt "machinery or equipment." 193 Ariz. at 93–94 ¶¶ 16–20, 970 P.2d at 447–48. We also rejected as a misreading of *Duval Sierrita Corp. v. Arizona Department of Revenue,* 116 Ariz. 200, 202, 568 P.2d 1098, 1100 (App.1977), Capitol's contention that the materials that it used in making casting molds were tax-exempt because their "ultimate function was to become an essential and integral part of a piece of machinery or equipment used directly in Capitol's manufacturing operations." *Id.* at 94–95 ¶¶ 21–25, 970 P.2d at 448–49.

¶ 5 In that same opinion, this court additionally held that, because the materials at issue were consumed in the manufacturing process after several uses, they were "expendable" and therefore excluded from the "machinery or equipment" exemption. *Id.* at 95 ¶¶ 26–30, 970 P.2d at 449. The question whether Capitol's materials qualified as "machinery or equipment" thus was deemed moot. *Id.* at 95 ¶ 26, 970 P.2d at 449.

¶ 6 On remand, the tax court entered a judgment on April 7, 1999, against Capitol for approximately $1.157 million in delinquent use taxes and interest through September 1998. However, the legislature then amended the tax exemptions at issue retroactively effective to taxable periods beginning May 19, 1977. *See* 1999 Ariz. Sess. Laws, ch. 153, § 3(A).

¶ 7 Some 21 months later, on January 12, 2001, Capitol moved for relief from the judgment on mandate. The tax court granted both Capitol's motion to vacate that judgment and ADOR's motion for summary judgment on the issue of the nature of the materials in question.

¶ 8 As amended in 1999, A.R.S. § 42–5159(B)(1) provides:

In addition to the [tax] exemptions allowed by subsection A of this section, the following categories of tangible personal property are also exempt:

1. Machinery, or equipment, used directly in manufacturing, processing, fabricating, job printing, refining or metallurgical operations. The terms "manufacturing," "processing," "fabricating," "job printing," "refining" and "metallurgical" as used in this paragraph refer to and include those operations commonly understood within their ordinary meaning. "Metallurgical operations" includes leaching, milling, precipitating, smelting and refining.

¶ 9 As amended also, A.R.S. § 42–5159(C)(1) provides:

The exemptions provided by subsection B of this section do not include:

1. Expendable materials. For purpose of this paragraph, expendable materials do not include any of the categories of tangible personal property specified in subsection B of this section regardless of the cost or useful life of that property.

## A. ADOR's Appeal from Order Vacating Judgment on Mandate

■ ¶ 10 As a general principle, we review an order granting relief pursuant to Arizona Rule of Civil Procedure ("Rule") 60(c) for an abuse of the superior court's discretion. *Jarostchuk v. Aricol Commun., Inc.*, 189 Ariz. 346, 348, 942 P.2d 1178, 1180 (App.1997). However, when the facts and the inferences therefrom are not disputed, and few or no conflicting procedural, factual or equitable considerations are presented, the question becomes one reviewed independently of the superior court's resolution. *See State v. Chapple*, 135 Ariz. 281, 297 n. 18, 660 P.2d 1208, 1224 n. 18 (1983).

■ ¶ 11 Capitol sought relief from the judgment on mandate pursuant to Rule 60(c)(6), which permits the superior court to relieve a party from a final judgment for any reason that justifies such relief (other than those reasons listed in clauses one through five, reasons not at issue in this case). *Panzino v. City of Phoenix*, 196 Ariz. 442, 445 ¶ 6, 999 P.2d 198, 201 (2000). A motion for

Rule 60(c)(6) relief must be filed "within a reasonable time" after the judgment is entered and then may be granted only if the moving party is able to show "extraordinary circumstances of hardship or injustice." *Id.*[1] ADOR first contends that Capitol failed in this regard.

■ ¶ 12 Capitol based its motion for Rule 60(c)(6) relief on the legislature's amendment to A.R.S. § 42–5159(C)(1). As stated above, in *Capitol Castings I*, we held that Capitol was not eligible for the exemption from use taxation in A.R.S. § 42–5159(B)(1) because the materials for which it sought the exemption constituted "expendable materials" explicitly excluded from the exemption by dint of A.R.S. § 42–5159(C)(1). *See* 193 Ariz. at 95 ¶¶ 26–30, 970 P.2d at 449. However, the effect of the 1999 amendment of § 42–5159(C)(1), retroactive to May 19, 1977, was to make clear that, from that date, this exception was wholly inapplicable to any use-tax exemption provided by § 42–5159(B). This effectively reversed the holding of *Capitol Castings I*, as was the legislature's prerogative, and supported Capitol's contention that its purchases of mold-making materials were exempt from use taxation throughout the audit period. Accordingly, the tax court did not err by ruling that, under those circumstances, it would be an "extraordinary injustice" to enforce a delinquent tax judgment against Capitol.

¶ 13 ADOR contends then that the tax court mistakenly granted relief from the judgment on mandate because Capitol failed to move for such relief within a "reasonable time" after entry of that judgment. Again we disagree.

¶ 14 The judgment was entered April 7, 1999. The legislation amending A.R.S. § 42–5159(C)(1) became effective August 6 of that year, *see* 1999 Ariz. Sess. Laws Ch. 153 (no emergency clause), but not until June 29, 2000, did ADOR take any enforcement action. Capitol then objected to the enforcement of the judgment on mandate in light of the statutory amendment. ADOR in turn responded that the amendment had not

---

1. The moving party also must demonstrate a meritorious claim or defense. *Jepson v. New,*

164 Ariz. 265, 273, 792 P.2d 728, 736 (1990).

brought Capitol's materials within the definition of "machinery or equipment" in A.R.S. § 42–5159(B)(1) and that, in any event, the amending legislation had established a deadline of December 31, 1999, for presenting refund claims to ADOR.[2] ADOR also informed Capitol that it would proceed to collect the judgment and oppose any motion for relief from judgment. Indeed, ADOR issued a tax bill to Capitol on December 9, 2000, stating that collection activities could be initiated if the bill were not paid within fifteen days. Shortly before that deadline, however, the parties agreed that, if Capitol filed its Rule 60 motion by January 15, 2001, ADOR would initiate no collection efforts until after that date.

¶ 15 Capitol moved for relief from judgment before that date, but the tax court directed it to file an affidavit "explaining the reason for the delay from August, 2000 until January, 2001 to file its Motion to Set Aside." After then considering Capitol's response, the court rejected ADOR's contention that Capitol had failed to timely file its motion for relief from judgment.

Although Capitol waited almost two years after the entry of judgment to file a Motion for Relief From Judgment, the delay was reasonable because of the Department's delay in beginning the collection process and Capitol's need to investigate the appropriateness of a Rule 60(c)(6) motion.

For those reasons plus ADOR's failure to identify any prejudice that it suffered as a result of the delay, *see Green Acres Trust v. London,* 142 Ariz. 12, 16–17, 688 P.2d 658, 662–63 (App.1983), *approved in part and vacated in part,* 141 Ariz. 609, 688 P.2d 617 (1984), we too reject ADOR's contention that Capitol failed to move for relief from judgment within a reasonable time.

¶ 16 ADOR then argues that, in *Capitol Castings I,* this court conclusively rejected Capitol's contention that its materials qualified for the use-tax exemption for "machinery or equipment" as meant in A.R.S. § 42–5159(B)(1) and that Capitol therefore had no meritorious defense that could support Rule

60(c)(6) relief from the judgment on mandate. Once more, we disagree.

■ ¶ 17 Establishing a "meritorious defense" as a foundation for Rule 60(c) relief does not require a showing that the moving party will likely prevail on the merits. The moving party need only demonstrate that it has "enough evidence to formulate a colorable defense." *Cline v. Ticor Title Ins. Co. of Cal.,* 154 Ariz. 343, 348 n. 5, 742 P.2d 844, 849 n. 5 (App.1987)(quoting *U–Totem Store v. Walker,* 142 Ariz. 549, 553, 691 P.2d 315, 319 (App.1984)).

¶ 18 This court's holding in *Capitol Castings I* was that the materials in question were "expendable" within the meaning of pre-amendment A.R.S. § 42–5159(C)(1) and therefore did not qualify for exemption from use taxation pursuant to § 42–5159(B)(1). *See* 193 Ariz. at 95 ¶ 29, 970 P.2d at 449. In its Rule 60(c)(6) motion, Capitol informed the tax court that § 42–5159(C)(1) had been amended retroactively to May 19, 1977, to render the exclusion inapplicable to any exemption in § 42–5159(B), including the exemption provided by subsection (B)(1). The court did not err in implicitly determining that Capitol had demonstrated a "meritorious defense."

### B. Capitol's Appeal from Summary Judgment for ADOR

■ ¶ 19 By vacating the judgment on mandate, the tax court permitted the parties' motions for summary judgment that resulted in the second judgment on appeal. The court determined that this court's discussion of "machinery" and "equipment" in *Capitol Castings I* prevented it from simply following its original determination that Capitol's materials constituted exempt "machinery or equipment." Instead, the court held, the lime and cement that Capitol used to minimize air pollution during the casting process and the refractory materials that it used to protect its equipment from intense heat were "clearly" not "equipment" within the meaning of A.R.S. § 42–5159(B)(1). The court further ruled:

December 31, 1999, affects Capitol's claims on appeal.

---

2. ADOR does not contend on appeal that Capitol's failure to present a refund claim before

The sand and materials, which are used to make molds, are likewise not machinery or equipment within the meaning of A.R.S. § 42–5159. The molds themselves would be equipment used in the manufacturing process regardless of the legislature's amendment to A.R.S. § 42–5159(C)(1), but the precursor components of the molds are not.

¶ 20 Capitol contends that the tax court erred. Relying on *Duval Sierrita*, 116 Ariz. at 202, 568 P.2d at 1100, Capitol maintains that its mold-making materials constitute "machinery or equipment" because (1) the materials are essential to its castings manufacturing operation, (2) the materials make that operation an integrated system and (3) the materials ultimately become part of the casting molds, which themselves indisputably qualify as "equipment." Capitol supports this assertion by pointing out that, if it had purchased casting molds from a third party, its purchases would plainly have constituted "equipment" used directly in its manufacturing or metallurgical operations and would therefore have been exempted from use taxation by A.R.S. § 42–5159(B)(1). It argues that the court in *Duval Sierrita* "seriously doubt[ed]" that the legislature would intend a different result when a taxpayer buys materials and builds "machinery or equipment" itself.[3] *Id.* at 204, 568 P.2d at 1102.

¶ 21 Capitol further argues that, in *People's Choice TV Corp. v. City of Tucson*, 202 Ariz. 401, 403 ¶ 7, 46 P.3d 412, 414 (2002), the supreme court applied to an exemption statute the traditional rule that taxing statutes are to be construed in favor of the taxpayer. It contends that *People's Choice* rendered inapplicable the "old shibboleth" that tax-exemption statutes should be construed strictly against the taxpayer. It further urges that the 1999 Arizona Legislature specifically intended to change the result in *Cap-*

*itol Castings I* when it amended A.R.S. § 42–5159(B)(1) and that a ruling in favor of ADOR would frustrate that intent and render the amendment ineffective. Capitol maintains that its own interpretation of A.R.S. § 42–5159(B)(1) advances the purpose of the use-tax exemption: supporting Arizona manufacturing by exempting the machinery and equipment used directly in those operations.

¶ 22 Thus, Capitol extensively criticizes this court's analysis of A.R.S. § 42–5159(B)(1) in *Capitol Castings I*. It urges that the 1999 amendment of A.R.S. § 42–5159(C)(1) "impacted the fundamental nature of what constitutes 'machinery or equipment' " by making clear that tangible personal property may qualify for exemption under subsection (B)(1) regardless of its "cost or useful life."

¶ 23 We do not agree with Capitol's analysis. First we address its claim that the supreme court effectively abandoned the principle that exemptions from taxation are to be strictly construed against the taxpayer. The opinion in *People's Choice*, on which Capitol primarily relies, does not support its assertion. The question in *People's Choice* was whether A.R.S. § 42–6004 prohibited the City of Tucson from imposing a transaction privilege tax on the business of providing telecommunications services pursuant to Tucson City Code § 19–470(a)(2)(a) and (c). *See* 202 Ariz. at 402–03 ¶¶ 4–6, 46 P.3d at 413–14. The court was not asked to construe a Tucson City Code exemption from the telecommunications services tax; instead, the question was whether the provision of A.R.S. § 42–6004(A)(2) that disallows municipal levies of transaction privilege taxes on "interstate telecommunications services" applied to invalidate that tax. *Id.* at 403–04 ¶ 8–10, 46 P.3d at 414–15. Further, both of the cases

---

**3.** However, the legislature certainly may constitutionally tax certain business practices but not other seemingly similar practices as long as the classification is meaningful and reasonable. *See, e.g., Ariz. State Tax Comm'n v. Lawrence Mfg. Co.*, 15 Ariz.App. 486, 489–90, 489 P.2d 860, 863–64 (1971)(upholding statutory scheme that taxed sales of mining equipment but exempted leases of mining equipment); *see also Seafirst Corp. v. Ariz. Dep't of Rev.*, 172 Ariz. 54, 56, 833 P.2d 725, 727 (Tax Ct.1992)("[T]he legislature may make such provisions as it chooses to provide for funding the needs of state government."). A business' decision "not to structure their contracts in the most advantageous manner" given Arizona's tax statutes does not present a challenge to the legislature's authority to levy such a tax. *Brink Elec. Const. Co. v. Ariz. Dep't of Rev.*, 184 Ariz. 354, 362, 909 P.2d 421, 429 (App. 1995).

cited by the court in *People's Choice* for the proposition that ambiguities in tax statutes are to be resolved in favor of the taxpayer, *Wilderness World, Inc. v. Arizona Department of Revenue*, 182 Ariz. 196, 199, 895 P.2d 108, 111 (1995), and *Cable Plus Company v. Arizona Department of Revenue*, 197 Ariz. 507, 509 ¶ 10, 4 P.3d 1050, 1052 (App.2000), applied that rule only in determining whether the statute in question extended to the particular taxpayers' activities. We do not understand *People's Choice* as an opinion departing from the familiar principles summarized in *Ebasco Services Inc. v. Arizona State Tax Commission*, 105 Ariz. 94, 459 P.2d 719 (1969). *See* 105 Ariz. at 97, 99, 459 P.2d at 722, 724 (The revenue statutes are to be liberally construed in favor of the taxpayer and strictly against the taxing authority; every interpretation is against exemptions from taxing statutes.).

¶ 24 In the opinion in *Capitol Castings I,* we stated that the status of Capitol's materials as "expendable" within the meaning of pre-amendment A.R.S. § 42–5159(C)(1) made moot the question whether those materials qualified as "machinery or equipment" within the exemption provided by § 42–5159(B)(1). *See* 193 Ariz. at 95 ¶ 26, 970 P.2d at 449. Contrary to Capitol's contention, however, this statement did not transform into *dicta* the discussion of "machinery or equipment" that preceded it. Rather, in that discussion, we expressly rejected the broad interpretation of "machinery or equipment" in the tax court's decision in *Cyprus Sierrita. See* 193 Ariz. at 93–95 ¶¶ 14–25, 970 P.2d at 447–49. We also spurned Capitol's interpretation of this court's opinion in *Duval Sierrita*, concluding:

> Capitol's exemption claim was based on a theory that its personalty "was exempt from the use tax because its ultimate function was to become an essential and integral part of a piece of machinery or equipment used directly in Capitol's manufacturing operations." We reject this theory because it is based solely on a misconstruction of *Duval.*

**4.** The legislature renumbered § 42–1409 as § 42–5159 effective January 1, 1999. *See* 1997

193 Ariz. at 95 ¶ 25, 970 P.2d at 449 (internal citation omitted).

¶ 25 The later remark in *Capitol Castings I* that the question whether Capitol's materials qualified as "machinery or equipment" within A.R.S. § 42–5159(B)(1) was "moot," *id.* at 95 ¶ 26, 970 P.2d at 449, constituted no more than a figurative way of emphasizing the independent significance of their "expendable" character under pre-amendment § 42–5159(C)(1). The holding in *Capitol Castings I* was twofold: The taxpayer's purchases of mold-making materials failed to qualify for use tax exemption first because the materials constituted "expendable materials" excluded from the exemption by § 42–5159(C)(1) and, second, because the materials did not constitute "machinery or equipment" within the exemption provided by § 42–5159(B)(1). *Id.* at 95 ¶¶ 26–27, 970 P.2d at 449.

¶ 26 As pointed out in *Capitol Castings I,* the issue before the court in *Duval* was not whether Duval Sierrita's spare and replacement parts constituted "machinery or equipment" within the meaning of the predecessor of A.R.S. § 42–5159(B)(1). *Id.* at 94 ¶ 22, 970 P.2d at 448. At the administrative level in the *Duval* litigation, ADOR had already abandoned its contention that they did not. *Duval,* 116 Ariz. at 203, 568 P.2d at 1101. The only question before the court in *Duval* was instead whether the spare and replacement parts were "used directly" in Duval Sierrita's manufacturing or metallurgical operations within subsection (B)(1). *Id.* The dispositive issue was whether "used directly" meant "actual use" or "ultimate use" in such operations. *Id.* The court determined that, by virtue of the predecessor of A.R.S. § 42–5159(B)(1),

> the boundaries of the exempt operation must be drawn taking into consideration the entire operation as it is "commonly understood" which operation must, of necessity, include those items which are essential to its operation and which make it an integrated system. We so interpret the words "used directly" in A.R.S. § 42–1409(B).[4]

Ariz. Sess. Laws, ch. 150, §§ 107, 110.

116 Ariz. at 206, 568 P.2d at 1104. The court held:

> We think it more logical that what the legislature intended by the use of the words "used directly" was to create a classification of personal property entitled to exemption from taxation, depending on its ultimate function in the mining or metallurgical processes.... Applying this interpretation to the spare and replacement parts, it is almost conceded that their ultimate function would be part of "machinery or equipment used directly" in the mining and metallurgical operations of Duval which are exempt. We therefore hold that spare or replacement parts fall into the classification of property exempted by the legislature from use tax liability.

*Id.* at 204–05, 568 P.2d at 1102–03.

¶ 27 In contrast to this case and *Capitol Castings I,* the parties and the court in *Duval Sierrita* accepted the proposition that the taxpayer's materials themselves amounted to "machinery or equipment." *See* 116 Ariz. at 203, 568 P.2d at 1101. The only question was whether they qualified for the use-tax exemption because they were also "used directly" in Duval Sierrita's manufacturing or metallurgical operations. *Id.* Contrary to Capitol's contention now, the reasoning of the court in *Duval Sierrita* does not support the view that any tangible property of whatever description, the ultimate function of which is to become part of machinery or equipment used directly in manufacturing, qualifies for the use-tax exemption provided by A.R.S. § 42–5159(B)(1). That statute grants the exemption only to tangible personal property that also constitutes "machinery or equipment."[5] As this court held in *Capitol Castings I,* Capitol's mold-making materials do not. *See* 193 Ariz. at 95 ¶ 23, 970 P.2d at 449.

¶ 28 Capitol nevertheless argues that the obvious legislative purpose behind the 1999 amendment to the exemption exclusion contained in A.R.S. § 42–159(C)(1) was to change the result in *Capitol Castings I.* It contends that this court would be doing "an end-run around the will of the Legislature" if we were to hold that Capitol's materials were not exempt because they do not constitute "machinery or equipment" within the meaning of A.R.S. § 42–5159(B)(1).

¶ 29 The legislative history on which Capitol relies demonstrates only that the legislature wished to address the holding in *Capitol Castings I* that the use-tax exemption for "machinery or equipment" is unavailable if the property in question is consumed in the manufacturing process. The 1999 amendment to A.R.S. § 42–5159(C)(1) quite plainly accomplished that purpose, but the fact that the legislature did not at the same time broaden the meaning of "machinery or equipment" certainly did not render the amendment "futile," "inert" or "trivial," as Capitol suggests. Rather, this so-called omission on the part of the legislature and the fact that its amendment to § 42–5159(C)(1) applied to every exemption provided in subsection (B) of that statute and not merely subsection (B)(1) instead suggests that the legislature had no desire to alter this court's analysis of "machinery or equipment" within the exemption in § 42–5159(B)(1).

¶ 30 In its reply brief in 1 CA–TX 02–0014, Capitol presents a contention that it did not present in its opening brief in that appeal. It argues that, by amending § 42–5159(C)(1) to render the subsection (B) exemptions applicable regardless of the cost or useful life of the property in question, the legislature necessarily undermined this court's characterization of "equipment" within subsection (B)(1) as " 'fixed assets' of a business enterprise other than land and buildings." *Capitol Castings I,* 193 Ariz. at 94 ¶ 19, 970 P.2d at 448. Capitol urges that the amendment to § 42–5159(C)(1) therefore effectively broadened the meaning of "machinery or equipment" within the meaning of § 42–5159(B)(1)

---

5. "Machinery and equipment," as described in § 42–5159, is a category of "tangible personal property." *See* A.R.S. § 42–5159(B)(1). To include objects manufactured by the taxpayer intended to be consumed or serve as components of its "machinery and equipment" would violate the legislature's definition of "tangible personal property": "personal property [that] may be seen, weighed, measured, felt or touched or is in any other manner perceptible to the senses." A.R.S. § 42–5001(16)(Supp.2002).

such that Capitol was now entitled to the exemption denied it in *Capitol Castings I.*

¶ 31 We ordinarily decline to consider arguments raised for the first time in a reply brief. *Wasserman v. Low,* 143 Ariz. 4, 9, n. 4, 691 P.2d 716, 721 n. 4 (App.1984). This principle does not bind us, however, when the ultimate issue is the correct interpretation or application of a statute. *See Evenstad v. State,* 178 Ariz. 578, 582, 875 P.2d 811, 815 (App.1993). We therefore deny ADOR's motion to strike pages 2 and 3 and 10 through 14 of Capitol's reply brief in 1 CA–TX 02–0014 and proceed to address Capitol's argument.

¶ 32 The 1999 amendment to A.R.S. § 42–5159(C)(1) made no express or implicit change in subsection (B)(1). The sole effect of the amendment was to render the "expendable materials" exclusion of subsection (C)(1) inapplicable to any of the categories of exempt tangible personal property listed in the 21 subdivisions of subsection (B). Now none of the subsection (B) exemptions may be denied because the property in question is deemed "expendable." At the same time, however, it remains true that none of the subsection (B) exemptions is available unless the property in question is within its express terms.

¶ 33 Both before and after the 1999 amendment to A.R.S. § 42–5159(C)(1) the use-tax exemption provided by subsection (B)(1) applied only to purchases of "machinery, or equipment, used directly in manufacturing ... and metallurgical operations." The legislature has never extended this exemption to "any tangible personal property" so used and indeed retained the restricted scope of the subsection (B)(1) exemption even in the face of its 1999 amendment to subsection (C)(1). We will not presume that the legislature had no purpose in doing so, and we take account of all the words that the legislature used in subsection (B)(1). *Citadel Care Center v. Ariz. Dep't of Rev.,* 200 Ariz. 286, 290 ¶ 14, 25 P.3d 1158, 1162 (App.2001).

¶ 34 We likewise find in Capitol's arguments no justification for departing from our analysis of "machinery or equipment" in *Capitol Castings I.* The materials that Capitol purchased during the audit period for making and using steel casting molds did not constitute "machinery or equipment" within the use tax exemption of A.R.S. § 42–5159(B)(1).

## CONCLUSION

¶ 35 ADOR's motion to strike portions of Capitol's reply brief in 1 CA–TX 02–0014 is denied.

¶ 36 The tax court did not abuse its discretion in granting Capitol relief from the judgment on mandate. It correctly determined that Capitol's materials were not entitled to the exemption in A.R.S. § 42–5159(B)(1) for "machinery, or equipment, used directly in manufacturing, processing, fabricating, job printing, refining or metallurgical operations."

¶ 37 Capitol requests an award of attorneys' fees on appeal pursuant to A.R.S. § 12–348(B) (Supp.2002). Because it is not the prevailing party, we deny the request.

¶ 38 The order and judgment on appeal are affirmed.

CONCURRING: SHELDON H. WEISBERG, Judge and MAURICE PORTLEY, Judge, Pro Tempore.*

---

* The Honorable Maurice Portley, a judge of the Maricopa County Superior Court, was authorized to participate as a Judge *Pro Tempore* of the Court of Appeals by order of the Chief Justice of the Arizona Supreme Court. *See* Ariz Const., art. 6, § 31; A.R.S. § 12–145 *et seq.* (1992 & Supp. 2002).