IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

————————————————

CARTER OIL COMPANY, INC., *Plaintiff/Appellee,*

v.

ARIZONA DEPARTMENT OF REVENUE, *Defendant/Appellant.*

No. 1 CA-TX 19-0002
FILED 1-30-2020

————————————————

Appeal from the Arizona Tax Court
No.  TX2016-001218
The Honorable Christopher T. Whitten, Judge

**REVERSED AND REMANDED**

————————————————

COUNSEL

Arizona Attorney General's Office, Phoenix
By Scot G. Teasdale, Rusty D. Crandell, Nancy K. Case
*Counsel for Defendant/Appellant*

Ballard Spahr LLP, Phoenix
By Brian W. LaCorte, Chase A. Bales
*Co-Counsel for Plaintiff/Appellee*

The Cavanagh Law Firm, Phoenix
By James G. Busby, Jr.
*Co-Counsel for Plaintiff/Appellee*

---

## OPINION

Judge James B. Morse Jr. delivered the opinion of the Court, in which Presiding Judge Kenton D. Jones and Judge Diane M. Johnsen joined.

---

**M O R S E**, Judge:

¶1  The Arizona Department of Revenue (the "Department") appeals from the tax court's entry of judgment in favor of Carter Oil Company, Inc. ("Carter Oil"). We hold that dyed diesel fuel used to power machinery involved in mining and processing operations is subject to the transaction privilege tax. Accordingly, we reverse the decision of the tax court and remand for entry of summary judgment in favor of the Department.

### FACTS AND PROCEDURAL BACKGROUND

¶2  This case involves the application of Arizona's transaction privilege tax to Carter Oil's sale of dyed diesel fuel[1] to Hanson Aggregates Arizona, Inc. ("Hanson"). Hanson uses the dyed diesel to power dozers, loaders, haul trucks, and rock crushers in its gravel mining and processing operations in Arizona.[2] In addition to providing the chemical energy that powers the machinery, dyed diesel also acts as a lubricant for the

---

[1] "Dyed diesel has no special properties that make it more suitable for use in [a specific context]; the dye merely identifies it as exempt from the federal excise tax." *Ala. Dep't of Revenue v. CSX Transp., Inc.*, 135 S. Ct. 1136, 1149 (2015) (Thomas, J., dissenting). Thus, the only difference between dyed diesel and non-dyed diesel is that dyed diesel is dyed red, only legally permitted for use in certain off-road diesel vehicles and machinery, and exempt from state and federal fuel excise taxes. *See* A.R.S. §§ 28-5601(9), -5610; -5645; 26 U.S.C. § 4082(a).

[2] The parties agree that Hanson uses the dozers, loaders, and haul trucks in mining operations. The parties dispute whether the rock crusher is used in mining operations under A.R.S. § 42-5061(B)(2), but the Department concedes the crusher performs "processing" under A.R.S. § 42-5061(B)(1).

components in the machinery's fuel systems. Without fuel, the machinery Hanson uses for mining and processing would not operate.

¶3          Carter Oil filed a refund claim for $11,769.45 in taxes it paid between January 2011 and June 2013 on the dyed diesel it sold to Hanson. Carter Oil asserted that the revenue from its sale of dyed diesel to Hanson was exempt from the transaction privilege tax under A.R.S. § 42-5061(B)(1) and (2) as "machinery or equipment" used in mining and processing operations.

¶4          The Department denied Carter Oil's refund claim. After exhausting its administrative remedies, Carter Oil filed a complaint in tax court pursuant to A.R.S. § 42-1254(C). The Department filed for summary judgment, and the tax court denied the motion, holding that the dyed diesel qualified as machinery or equipment when used directly in mining operations, and was therefore exempt from the transaction privilege tax. Ultimately, the tax court granted judgment in favor of Carter Oil. The Department timely appealed, and we have jurisdiction pursuant to A.R.S. § 12-2101(A)(1).

## DISCUSSION

¶5          We review the tax court's ruling on a motion for summary judgment and its interpretation of Arizona's tax statutes *de novo*. *SolarCity Corp. v. Ariz. Dep't of Revenue*, 243 Ariz. 477, 480, ¶ 8 (2018). Exemptions from the transaction privilege tax must be strictly construed, with "the presumption being against such exemption." *Tucson Transit Auth., Inc. v. Nelson*, 107 Ariz. 246, 252 (1971). Nonetheless, exemptions should "not be so strictly construed as to defeat or destroy the [legislative] intent and purpose." *State ex rel. Ariz. Dep't of Revenue v. Capitol Castings, Inc.*, 207 Ariz. 445, 447-48, ¶ 10 (2004) (alteration in original) (quoting W.E. Shipley, Annotation, *Items or Materials Exempt from Use Tax as Used in Manufacturing, Processing, or the Like*, 30 A.L.R.2d 1439, 1442 (1953)). Applying these standards, we consider whether the dyed diesel at issue was exempt from the transaction privilege tax under A.R.S. § 42-5061(B)(1) and (2).

### A.     Exemptions from the Transaction Privilege Tax.

¶6          Arizona's transaction privilege tax is "an excise tax on the privilege or right to engage in an occupation or business in the State of Arizona." *Ariz. Dep't of Revenue v. Mountain States Tel. and Tel. Co.*, 113 Ariz. 467, 468 (1976). The retail classification imposes a tax on the gross proceeds of sales or the gross income derived from the "business of selling tangible

personal property at retail." A.R.S. § 42-5061(A). The parties agree that dyed diesel is tangible personal property.

¶7	The legislature carved out numerous exemptions to the retail transaction privilege tax. *See* A.R.S. § 42-5061. The exemptions at issue in this case are for:

> 1. Machinery, or equipment, used directly in manufacturing, processing, fabricating, job printing, refining or metallurgical operations. The terms "manufacturing", "processing", "fabricating", "job printing", "refining" and "metallurgical" as used in this paragraph refer to and include those operations commonly understood within their ordinary meaning.
>
> 2. Mining machinery, or equipment, used directly in the process of extracting ores or minerals from the earth for commercial purposes, including equipment required to prepare the materials for extraction and handling, loading or transporting such extracted material to the surface. "Mining" includes underground, surface and open pit operations for extracting ores and minerals.

A.R.S. § 42-5061(B)(1) and (2) (the "mining and processing exemptions").[3] The issue we must decide is whether the dyed diesel sold to Hanson is "machinery or equipment" used directly in mining and processing operations.[4]

---

[3]	The legislature provided similar exemptions to the use tax. *See* A.R.S. § 42-5159(B)(1) and (2). While the transaction privilege tax is imposed on revenue from sales within the state, the "use tax is designed to reach out-of-state sales of tangible personal property to Arizona purchasers." *Ariz. Elec. Power Coop., Inc. v. Ariz. Dep't of Revenue*, 242 Ariz. 85, 87, ¶ 7 (App. 2017); *see* A.R.S. § 42-5155(A). The two taxes are complementary. *Ariz. Dep't of Revenue v. Care Computer Sys., Inc.*, 197 Ariz. 414, 419, ¶ 22 (App. 2000).

[4]	Our analysis of the term "machinery or equipment" used in both subsections is the same. *See Obregon v. Indus. Comm'n*, 217 Ariz. 612, 616, ¶ 21 (App. 2008) ("It is a 'normal rule of statutory construction that identical words used in different parts of the same Act are intended to have the same meaning.'" (quoting *Gustafson v. Alloyd Co., Inc.*, 513 U.S. 561, 570 (1995))).

**¶8**  "'Our primary goal in interpreting statutes is to effectuate the legislature's intent' as expressed in the statute's text." *Silver v. Pueblo Del Sol Water Co.*, 244 Ariz. 553, 559, ¶ 22 (2018) (quoting *Rasor v. Nw. Hosp., LLC*, 243 Ariz. 160, 164, ¶ 20 (2017)). If a statute is unambiguous, "we apply it without further analysis." *Glazer v. State*, 237 Ariz. 160, 163, ¶ 12 (2015).

**¶9**  When this Court first addressed the mining and processing exemptions we found that "the legislative purpose for the exemption statute is to encourage mining in this state so that the end product of that mining and metallurgical activity (sales of copper) is itself subject to taxation under the transaction privilege tax." *Duval Sierrita Corp. v. Ariz. Dep't of Revenue*, 116 Ariz. 200, 204 (App. 1977). In *Capitol Castings*, our supreme court tracked this precedent and found that the exemptions lack "definitional specificity" but their underlying purpose is "to stimulate business investment in Arizona in order to improve the state's economy and increase revenue from other taxes, such as income and property taxes." 207 Ariz. at 448, ¶ 13 (first citing *Ariz. Dep't of Revenue v. Blue Line Distrib., Inc.*, 202 Ariz. 266, 268, ¶ 11 (App. 2002); then citing *Duval Sierrita*, 116 Ariz. at 204); *see also Mesa v. Smith Co.*, 169 Ariz. 42, 45 (App. 1991) (recognizing that we are "bound by the construction of a statute given by the Arizona Supreme Court."). Thus, "applying [a] more expansive definition of machinery or equipment better serves the legislative goal." *Capitol Castings*, 207 Ariz. at 451, ¶ 24; *see also Empire Sw. LLC v. Ariz. Dep't of Revenue*, 244 Ariz. 542, 546, ¶ 21 (App. 2018) (review denied Oct. 30, 2018) (Beene, J., specially concurring) (explaining that *Capitol Castings* precludes us from applying "the 'primary rule' of statutory construction and giv[ing] the words in § 42-5061(B)(2) their ordinary meaning").

### B. *Capitol Castings* **Test for Determining Exemptions.**

**¶10**  In *Capitol Castings*, our supreme court addressed the "machinery or equipment" exemptions and held that "silica sand, chemical binders, exothermic sleeves, mold cores, mold wash, and hot topping" are exempt from the transaction privilege tax when used directly in a "qualifying process." 207 Ariz. at 451, ¶ 26. In reaching this conclusion, the supreme court relied on *Duval Sierrita*, where we "adopted two tests—the ultimate function and integrated rule tests—for determining whether items were machinery or equipment 'used directly' in qualifying operations" under the mining and processing exemptions. *Capitol Castings*, 207 Ariz. at 448, 451, ¶¶ 15, 24-25 (citing *Duval Sierrita*, 116 Ariz. at 205-07).

**¶11**  In *Duval Sierrita*, we held that spare and replacement parts, as well as a conveyor belt, pipes, and booster pumps, were exempt. *Duval*

*Sierrita*, 116 Ariz. at 204-07. Our supreme court concluded that under the *Duval Sierrita* approach, when considering the spare and replacement parts, "rather than view each item at a fixed point in time, without reference to its function, [a court] should apply the 'ultimate function' test: that is, it should examine how the item functions in the industrial process at issue to see whether the item qualifies for" the exemption. *Capitol Castings*, 207 Ariz. at 450, ¶ 21 (citing *Duval Sierrita*, 116 Ariz. at 204). The belt, pipes, and booster pumps were considered under an "'integrated approach' that addresses how the item is used in the industrial processes described in [the statute] and considers the item's necessity to the process." *Id.* (citing *Duval Sierrita*, 116 Ariz. at 205). "The *Duval Sierrita* approaches allow some items that would not ordinarily be considered 'machinery' or 'equipment' to qualify for the . . . exemption if they function as a necessary part of an integrated process." *Capitol Castings*, 207 Ariz. at 450, ¶ 21.

¶12 The Department conceded the items at issue in *Duval Sierrita* were "machinery or equipment." 116 Ariz. at 203. But in other situations, "items not traditionally considered to be machinery or equipment may qualify as such depending on their function in the process." *Capitol Castings*, 207 Ariz. at 450, ¶ 22; *see CCI Europe, Inc. v. Ariz. Dep't of Revenue*, 237 Ariz. 50, 53, ¶ 12 (App. 2015) (finding "software is machinery or equipment" (citing *Capitol Castings*, 207 Ariz. at 450, ¶ 22)). For example, our supreme court recognized that certain "chemicals, 'sulfuric acid, LIX, and Orfom 7,' qualified as machinery or equipment" under the exemption "[b]ecause the chemicals functioned like items traditionally thought to be machinery or equipment" in the process of extracting copper from ore. *Capitol Castings*, 207 Ariz. at 450, ¶ 22 (citing *Ariz. Dep't of Revenue v. Cyprus Sierrita Corp.*, 177 Ariz. 301, 302-04 (Ariz. Tax Ct. 1994)); *see also RenalWest L.C. v. Ariz. Dep't of Revenue*, 189 Ariz. 409, 414 (App. 1997) (holding that a chemical solution used in dialysis is machinery or equipment (citing *Cyprus Sierrita*, 177 Ariz. at 303)).

¶13 Thus, we must "consider a number of factors to determine whether the item qualifies" for the exemption. *Capitol Castings*, 207 Ariz. at 450, ¶ 24. "First, a court must apply flexible and commonly used definitions of machinery and equipment within the relevant industry." *Id.* Then, "bearing in mind these flexible definitions, a court should examine the nature of the item and its role in the operations." *Id.* at 451, ¶ 25.

¶14 The parties do not offer a definition of "equipment"[5] as that word is commonly used in the mining industry,[6] but *Capitol Castings* defined "equipment" to include "the articles, implements, etc., used or needed for a specific purpose or activity." 207 Ariz. at 448, ¶ 12 (quoting Webster's College Dictionary 442 (2d ed. 1997)). *Capitol Castings* also sets out several factors for courts to consider when examining the "nature of the item and its role in the operations." 207 Ariz. at 451, ¶ 25. The six factors are: (1) whether the item is "essential or necessary to the completion of the finished product[,]" (2) "[t]he prominence of an item's role in maintaining a harmonious 'integrated synchronized system' with the indisputably exempt items[,]" (3) "the nexus between the item at issue and the process of converting raw materials into finished products[,]" (4) "whether the item physically touches the raw materials or work in process[,]" (5) "whether the item manipulates or affects the raw materials or work in process[,]" and (6) "whether the item adds value to the raw materials or work in process as opposed to simply reducing costs or relating to post-production activities." *Id.* (citing *Duval Sierrita*, 116 Ariz. at 205-07).

¶15 Applying these factors, we conclude the dyed diesel Hanson used was not machinery or equipment used directly in mining and processing. Dyed diesel's role in "the entire operation," *Duval Sierrita*, 116 Ariz. at 206, was vital but was not equivalent to the equipment and machinery it powered in Hanson's mining and processing operations. Unlike the sand in *Capitol Castings*, 207 Ariz. at 446-47, ¶ 3, or the sulfuric acid in *Cyprus Sierrita*, 177 Ariz. at 302, dyed diesel neither touched nor manipulated the raw materials. In *Cyprus Sierrita*, the mine sprayed sulfuric acid onto ore to strip away the copper from any attached impurities. 177 Ariz. at 302. The exempt items in *Capitol Castings* "had a close nexus to the process as they directly touched the raw materials in the process of converting them into the finished product." 207 Ariz. at 451, ¶ 26. In contrast, dyed diesel is the fuel that powered Hanson's exempt machinery and equipment, and was poured into the machinery's fuel tanks rather than onto the raw material. Although dyed diesel was necessary for Hanson's machinery to operate, as used here, it did not function "like items traditionally thought to be machinery or equipment." *Id.* at 450, ¶ 22.

---

[5] Carter Oil does not argue on appeal that dyed diesel is "machinery."

[6] A dictionary published by the United States Bureau of Mines also lacked a definition of "equipment." *See* U.S. Dep't of the Interior, Bureau of Mines, *Dictionary of Mining, Mineral, and Related Terms*, 1103-04 (2d ed. 1996).

¶16        Furthermore, as this Court previously noted, other statutes reflect "the Arizona Legislature's willingness to expressly exempt fuels from taxation in specific situations." *Ariz. Elec. Power Coop., Inc. v. Ariz. Dep't of Revenue*, 242 Ariz. 85, 89, ¶ 17 (App. 2017) (citations omitted). The statute delineating exemptions from the transaction privilege tax includes four different exemptions for "fuel." *See* A.R.S. § 42-5061(A)(22), (37), (46), (54). Tellingly, the statute provides separate exemptions both for "machinery and equipment" and the fuels required to power the exempted items. *Compare* A.R.S. § 42-5061(B)(4) (exempting machinery and equipment used directly in electrical production) *with* A.R.S. § 42-5061(A)(37) (exempting certain fuels used to generate electricity); *see also* 2018 Ariz. Sess. Laws, ch. 263, § 1 (2nd Reg. Sess.) (H.B. 2003) (conditionally exempting sales of coal). If, as Carter Oil argues, the statutory exemptions for "machinery or equipment" necessarily included the fuels that power such machinery or equipment, then these separate exemptions would be unnecessary. Because the legislature specifically provided an exemption for fuels, apart from machinery and equipment, elsewhere in the same statute, we cannot adopt such an expansive interpretation of "machinery and equipment" in § 42-5061(B)(1) and (2). *See City of Flagstaff v. Mangum*, 164 Ariz. 395, 398 (1990) ("Where the legislature uses a term within one statute and excludes it from another, the term usually will not be read into the provision from which it was excluded.").

¶17        Finally, we "bear in mind that the goal of the exemption—promoting economic development—must not be frustrated by too narrow an application." *Capitol Castings*, 207 Ariz. at 451, ¶ 25. As discussed below, that goal is not frustrated by the taxation of dyed diesel used to power mining and processing equipment. The fuel Carter Oil sells to Hanson already receives favorable tax treatment in comparison to non-dyed diesel. *Compare* A.R.S. § 28-5606(B)(2) (twenty-six cents per gallon excise tax on non-dyed diesel) *with* A.R.S. § 42-5010(A)(1)(*l*) and (G) (five and six-tenths percent tax on retail sales).

##         C.    A Separate and Specific Statutory Tax Scheme Applies.

¶18        "Words in statutes should be read in context in determining their meaning." *Stambaugh v. Killian*, 242 Ariz. 508, 509, ¶ 7 (2017). "Where we have a general statute and a specific statute that are in conflict, the specific governs." *State v. Rice*, 110 Ariz. 210, 213 (1973). "In construing a specific provision, we look to the statute as a whole and we may also consider statutes that are *in pari materia*—of the same subject or general purpose—for guidance and to give effect to all of the provisions involved." *Stambaugh*, 242 Ariz. at 509, ¶ 7.

¶19        The legislature does not hide fuel-tax exemptions. If it wished to exempt dyed diesel from the transaction privilege tax, then it would have done so plainly, not by expecting that the Department, taxpayers, and courts would interpret "equipment and machinery" to include "fuel." When legislatures create tax exemptions they "do so notoriously enough to attract investors, not surreptitiously enough to evade detection for half a century." *United States v. Wells Fargo Bank*, 485 U.S. 351, 357 (1988) (rejecting claim that Congress intended to "break new ground in tax law by cleverly hiding an estate tax exemption"); *cf. Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001) (legislatures do not "hide elephants in mouseholes."). Further, "[t]he provision of one exemption in a statute implicitly denies the existence of other unstated exemptions." *Ariz. Elec. Power*, 242 Ariz. at 89, ¶ 17 (quoting *State Comp. Fund v. Superior Court (EnerGCorp, Inc.)*, 190 Ariz. 371, 375-76 (App. 1997)); *see also Pima County v. Heinfeld*, 134 Ariz. 133, 134 (1982) ("A well established rule of statutory construction provides that the expression of one or more items of a class indicates an intent to exclude all items of the same class which are not expressed.").

¶20        Separate from the transaction privilege tax, Arizona imposes a per-gallon excise tax on motor fuels, including non-dyed diesel. *See* A.R.S. § 28-5606; *City of Mesa v. Killingsworth*, 96 Ariz. 290, 296 (1964). The stated purpose of the diesel fuel tax is to "partially compensate this state for the use of its highways." A.R.S. § 28-5606(B). Accordingly, the legislature explicitly provided an exemption from the fuel tax for dyed diesel used in machines and vehicles that do not operate on state highways—such as the ones used by Hanson in this case. *See* A.R.S. § 28-5610(A)(8).

¶21        The legislature added the mining and processing exemptions to the transaction privilege tax in 1968. *See* 1968 Ariz. Sess. Law, ch. 2, § 1 (3rd Spec. Sess.) (S.B. 4). At the time, non-dyed diesel used by on-highway vehicles was subject to both the transaction privilege tax and the fuel tax. *See* Op. Ariz. Att'y Gen. I80-087. In 1980, however, the legislature enacted an exemption from the transaction privilege tax for non-dyed diesel taxed as fuel. *See* 1980 Ariz. Sess. Laws, ch. 2, § 1 (3rd. Spec. Sess.) (H.B. 2001); *see also* A.R.S. § 42-5061(A)(22). The legislature did not likewise exempt dyed diesel used in off-highway vehicles—such as the ones used by Hanson in this case. The result is that the fuel tax, not the transaction privilege tax, applies to fuel, including non-dyed diesel, used to power vehicles on the road. Dyed diesel, which powers off-road equipment and vehicles, remains subject to the transaction privilege tax but not the fuel tax. Had the legislature wanted to exempt diesel used in mining and processing from the transaction privilege tax, it could have done so, either in the original 1968 mining and processing exemptions, or in the 1980 amendment

exempting non-dyed diesel. It did neither. We infer that the legislature's choices were deliberate and that it intended that dyed diesel not taxed as fuel should remain subject to the transaction privilege tax. This interpretation gives "effect to all of the provisions involved." *Stambaugh*, 242 Ariz. at 509, ¶ 7.

**¶22** Accordingly, we conclude that Carter Oil's sale of dyed diesel to Hanson is subject to Arizona's transaction privilege tax. Because we determine that the dyed diesel is not machinery or equipment used directly in mining or processing operations under the test established by our supreme court in *Capitol Castings*, we need not consider the Department's remaining arguments.

### D.     Other Exemption Decisions Are Distinguishable.

**¶23** Carter Oil relies on two earlier opinions of this Court, *Chevron* and *Empire Southwest*, in which we held that "industrial oils and greases" and a "fuel truck" used in mining operations are exempt from the transaction privilege tax. However, neither case is dispositive as to dyed diesel.

**¶24** In *Chevron*, the plaintiff sought a tax refund for the sale of "industrial oils and greases" for use in mining and metallurgical operations. 238 Ariz. at 520, ¶ 1. The industrial oils and greases at issue were "engine oil, gear oil, grease, and open gear lube." *Id.* at 520, ¶ 4. We concluded, "based on the uncontroverted evidence, . . . that the oils and greases function[ed] as equipment in [the] operations." *Id.* at ¶ 21.

**¶25** The approach we adopted in *Chevron* for industrial oils and greases is inapplicable to dyed diesel. First, as discussed above, the legislature provided a separate and distinct fuel tax exemption for dyed diesel and did not apply that exemption to the transaction privilege tax. No similar situation exists for "industrial oils and greases." Second, although dyed diesel has some lubricating properties, that does not mean the legislature intended dyed diesel to be exempt as a lubricant. The legislature may tax some items and simultaneously exempt other seemingly similar items. *See, e.g., Ariz. State Tax Comm'n v. Lawrence Mfg. Co.*, 15 Ariz. App. 486, 489-90 (1971) (upholding statutory scheme that taxed leases of mining equipment but exempted sales of mining equipment). Finally, our decision in *Chevron* was "consistent with the Department's policy which considers 'items such as antifreeze, motor oil, transmission fluid, bearing grease and windshield washer solution . . . a part of the vehicle, and therefore, qualify for exemption.'" *Chevron*, 238 Ariz. at 524, ¶ 22 (quoting Transaction

Privilege Tax Ruling TPR 2003–2, 2003 WL 23178083 (Ariz. Bd. Tax App. Dec. 4, 2003)). Although the Department in *Chevron* attempted to distinguish its contrary positions, we reasoned that the "same logic applies to the oils and greases." *Chevron*, 238 Ariz. at 524, ¶ 22. After *Chevron* was decided, our legislature specified that courts shall determine all questions of law "without deference to any previous determination that may have been made on the question by the agency." *Compare* A.R.S. § 12-910(E) (2019) *with* A.R.S. § 12-910(E) (2016); *cf. also City of Phoenix v. Orbitz Worldwide Inc.*, 247 Ariz. 234, 289, ¶ 52 (2019) (Timmer, V.C.J., dissenting) (citing *Scottsdale Healthcare, Inc. v. Ariz. Health Care Cost Containment Sys. Admin.*, 206 Ariz. 1, 8, ¶ 27 (2003) for the proposition that an "agency interpretation of a statute is given weight"). Accordingly, if the Department had treated dyed diesel as "equipment" subject to the exemption, we would not defer to that interpretation, nor defer to the Department's longstanding and consistent position that dyed diesel is subject to the transaction privilege tax. *See* A.A.C. 15-5-1846 (Eff. Nov. 7, 1978) ("Sales of diesel fuel to consumers are taxable.")[7]; *Cyprus Bagdad Copper Corp. v. Ariz. Dep't of Revenue*, No. 683–89–U, 1990 WL 177835 (Ariz. Bd. Tax. App. June 26, 1990) (providing that because diesel used at a copper mine is "exempted and not subject to the [diesel] fuel tax under title 28, it is not exempted and is subject to the use tax of title 42.").

¶26 Our decision in *Empire Southwest* is similarly unhelpful to Carter Oil. There, we concluded that a fuel truck was "used directly in the process of extracting ore from the earth [and therefore] exempt from transaction privilege tax." 244 Ariz. at 545, ¶ 16. There was no dispute in *Empire Southwest* about whether the fuel truck was "machinery or equipment." Instead, the case turned solely on whether "the [t]ruck was 'used directly in the process of extracting ores or minerals from the earth.'" *Id.* at 544, ¶ 7 (emphasis omitted) (quoting A.R.S. § 42-5061(B)(2)). The mine used the truck to transport "fuel and lubricants from the pit rim to equipment located several hundred feet below [which] require[d] refueling every twelve hours." *Empire Sw.*, at 545, ¶ 12. We found the truck operated similarly to the booster pumps needed to transport water to the mill in *Duval Sierrita*, "as part of an integrated synchronized system." *Empire Sw.*, 244 Ariz. at 545, ¶ 14-15 (citing *Duval Sierrita*, 116 Ariz. at 206). Thus, *Empire*

---

7    A.A.C. 15-5-1846 was renumbered and partially amended in 1985, 1993, and 2004. *See* A.A.C. R15-5-3004 (Eff. July 23, 1985), R15-5-127 (Eff. Aug. 9, 1993), and R15-5-127 (Eff. Dec. 4, 2004) ("Gross receipts from the sale of dyed diesel fuel are subject to transaction privilege tax.").

*Southwest* is silent about whether the diesel that powers machinery or equipment is also machinery or equipment.

¶27  Because fuel does not touch, manipulate, or add value to the raw materials in the mining process, it is neither machinery or equipment nor an item "traditionally thought to be machinery or equipment." *Capitol Castings*, 207 Ariz. at 450, ¶ 22. Our decision is consistent with our analysis in *Chevron* and *Empire Southwest*. "Equipment or machinery" includes trucks and the parts needed to be replaced on such machinery or equipment, whether air filters or lubricating oil, but, absent an express fuel exemption, it does not include the fuel necessary to power the machinery.

## CONCLUSION

¶28  The question presented is purely one of law. "[W]here the issues can be decided as a matter of law, we have the authority both to vacate the trial court's grant of summary judgment in favor of one party and to enter summary judgment for the other party if appropriate." *Anderson v. Country Life Ins. Co.*, 180 Ariz. 625, 628 (App. 1994). For the foregoing reasons, we reverse the judgment of the tax court and direct entry of judgment for the Department on remand.



AMY M. WOOD • Clerk of the Court
FILED: AA