556 P.2d 1129

ARIZONA DEPARTMENT OF REVENUE, as statutory successor to the powers and duties of the State Tax Commission of Arizona, Robert Kennedy, Chairman, John M. Hazelett, member, L. Waldo DeWitt, member, Appellants,

v.

The MOUNTAIN STATES TELEPHONE AND TELEGRAPH COMPANY, a Colorado Corporation, Appellee.

No. 12636.

Supreme Court of Arizona,
In Banc.

Nov. 3, 1976.

Bruce E. Babbitt, Atty. Gen. by Ian A. MacPherson, Asst. Atty. Gen., Phoenix, for appellants.

Fennemore, Craig, von Ammon & Udall by Ronald L. Ballard and Stephen M. Savage, Phoenix, for appellee.

CAMERON, Chief Justice.

The State Tax Commission assessed a transactional privilege and education excise tax of $3,172.28 against Mountain States Telephone and Telegraph Company (Mountain Bell) on the sale and lease of telephone equipment to the United States Government, Department of the Army. The State Tax Commission held that the total gross proceeds received by Mountain Bell for the sale of the system and the lease of the switcher were taxable under the transaction privilege and education excise taxes, A.R.S. § 42–1301, et seq., § 42–1361, et seq., as a sale and lease of tangible personal property at retail. Mountain Bell paid the taxes under protest and filed suit in Superior Court for their recovery. The parties submitted the controversy for decision on cross motions for summary judgment. The court entered judgment for Mountain Bell for recovery of all taxes paid. The State Tax Commission appealed to this court pursuant to A.R.S. § 42–1339(B).

Although more than one issue is raised by the pleadings in the trial court and by the parties on appeal, we believe the answer to one question is dispositive of this matter: Are the sale and lease transactions exempt "casual activities or sales" under A.R.S. § 42–1301(1)?

The facts necessary for a determination of this matter on appeal are as follows.

**468**

Mountain Bell is engaged in the business of providing telephone communication service. It provides such service with communications equipment, owned by Mountain Bell, some of which is located in the interior of homes, offices, and other structures. Mountain Bell rarely sells or leases installed communications equipment to private or public customers and such sales or leases are not a part of its usual or anticipated business.

In 1967, Mountain Bell installed a telephone communications system in Greely Hall, Fort Huachuca, Arizona. The component parts of the system, such as telephones, transmitters, switchers, power plant transformers and cable, were manufactured by Western Electric Manufacturing Company. The component parts were then combined by Mountain Bell employees into an integrated telephone communications system. This system was operated and maintained by Mountain Bell from 1967 until early 1973, during which time Mountain Bell charged the Department of the Army the usual tariff rates.

In 1973 the entire system was sold, in place, to the United States Government, Department of the Army, for the price of $192,045.00. Mountain Bell also leased a PBX 711 switcher to the Army for two months for a total rental of $19,440.00. This sale and lease transaction was at the request of the United States Government and, as stipulated by the parties, was the only such transaction entered into by Mountain Bell in Arizona during the "past several years."

## THE SALE

■ The transaction privilege tax, A.R.S. § 42–1301, et seq., is an excise tax on the privilege or right to engage in an occupation or business in the State of Arizona. *Tower Plaza Investments, Limited* v. *DeWitt*, 109 Ariz. 248, 508 P.2d 324 (1973). It is not a tax upon the sale itself nor upon the property sold. *Arizona State Tax Commission v. Garrett Corporation*, 79 Ariz. 389, 291 P.2d 208 (1955). Moun-

tain Bell pays these taxes as a business engaged in providing telephone communication services. A.R.S. § 42–1310(2)(c).

The tax on the sale of the telephone communications system was predicated on A.R.S. § 42–1312(A). This statute provides that the privilege tax

"shall be levied and collected at an amount equal to two per cent of the gross proceeds of sales or gross income from the business upon every person engaging or continuing within this state in the business of selling any tangible personal property whatever at retail * * *."

The first inquiry then is whether Mountain Bell is engaged in the "business of selling" property at retail. A.R.S. § 42–1301(1) defines "business" as:

" 'Business' includes all activities or acts, personal or corporate, engaged in or caused to be engaged in with the object of gain, benefit or advantage, either directly or indirectly, *but not casual activities or sales*." (Emphasis supplied)

In *Trico Electric Cooperative v. State Tax Commission*, 79 Ariz. 293, 296, 288 P. 2d 782, 784 (1955), "casual" was defined as:

" 'a happening without design and without being expected; coming without regularity; occasional'. Webster's International Dictionary, second edition. It carries the idea of lack of continuity."

And "casual sales" are also defined by the Regulations of the Department of Revenue, R15–5–219(H)(1) (1975):

"A casual sale is a sale at retail, which is an isolated transaction made by a person not engaged in the business of selling, of an article such person has produced or purchased for his own use or consumption. It is a sale only occasionally made by a person who does not hold himself out as being a seller of such articles and who does not make a practice of making such sales. Unless such sales are of such number, volume, or frequen-

cy as to indicate disregard or evasion of the Act, they are not taxable. The term is applied, for example, to a dairyman selling a milk cow from his herd, a farmer selling a horse from his work stock, or a person selling out of an inventory kept for his own use or consumption as an accommodation to another person."

In *Trico,* supra, the appellant, an electrical cooperative whose principal business was the sale of electrical power, made some 145 sales of surplus materials at cost over a three year period. This court held that the sales could not be classified as "casual sales" because the surpluses were anticipated and sold in the regular course of business to various companies. The regular disposal of surplus materials constituted a separate business of selling tangible personal property at retail and was taxable under the predecessor of A.R.S. § 42–1312.

A contrary result was reached in *State v. Selby,* 25 Ariz.App. 500, 544 P.2d 717 (1976). The husband and wife stockholders of a car dealership leased to that corporation the real property upon which the business was situated. The Court of Appeals held that the act of leasing only one piece of property came under the "casual activities" exception of A.R.S. § 42–1301(1) because it did not involve enough activity to constitute the "business" of leasing or renting property.

We think *Selby,* supra, is dispositive of this case. The facts submitted by the parties clearly support the conclusion that Mountain Bell made an unanticipated and isolated sale of its equipment to the United States Government. We cannot say that Mountain Bell is in the business of selling telephone communications equipment on the basis of one sale. This was a "casual sale" within the meaning of A.R.S. § 42–1301(1) and is not subject to the transaction privilege tax under A.R.S. § 42–1312.

## THE LEASE

The tax on the lease of the PBX switcher was assessed under A.R.S. § 42–1314(A)(2), which levies the transaction privilege tax upon persons engaging or continuing in the business of leasing or renting tangible personal property for a consideration. For the same reasons advanced above, the lease proceeds are not taxable under A.R.S. § 42–1314. Mountain Bell is not in the "business" of leasing and the lease was a casual one and of short duration.

Affirmed.

STRUCKMEYER, V. C. J., and HAYS, HOLOHAN and GORDON, JJ., concur.