IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

CCI EUROPE, INC., *Plaintiff/Appellee*,

*v.*

ARIZONA DEPARTMENT OF REVENUE, *Defendant/Appellant*.

No. 1 CA-TX 13-0002
FILED 3-12-2015

---

Appeal from the Superior Court in Maricopa County
No. TX2010-000404
The Honorable Dean M. Fink, Judge

**AFFIRMED**

---

COUNSEL

Steptoe & Johnson, LLP, Phoenix
By Patrick Derdenger, Bennett Evan Cooper
*Counsel for Plaintiff/Appellee*

Arizona Attorney General's Office, Phoenix
By Jerry A. Fries, Benjamin H. Updike
*Counsel for Defendant/Appellant*

---

**OPINION**

Judge Maurice Portley delivered the Opinion of the court, in which Presiding Judge Patricia A. Orozco and Judge Randall M. Howe joined.

---

**P O R T L E Y**, Judge:

¶1        We are asked to determine whether CCI Europe, Inc. ("CCI") is required to pay the transaction privilege tax on the proceeds it receives from its software license agreement and maintenance agreements with Phoenix Newspapers, Inc. ("PNI").  Because the software is used as part of the manufacturing process to produce the printed version of the *Arizona Republic* newspaper, the proceeds from the agreements are statutorily exempt.  Accordingly, we affirm the tax court's summary judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2        CCI develops and sells software to facilitate the production of printed newspapers.  The software performs all layout, formatting, and typesetting functions necessary to produce printed editions of a newspaper.  For example, the software automatically:  creates the page layout for the newspaper, margin width, column width, as well as spacing and location of articles, editorials, advertisements, photos, and graphics; assigns a naming convention that identifies each page and its relationship to the finished product; and in the printing process, dictates whether pages are printed in color, or in black and white.

¶3        CCI granted PNI a 99-year license to use its software to produce the printed *Arizona Republic* in 1997.  Additionally, the parties entered into software maintenance agreements where CCI agreed to provide PNI with new software updates and releases, as well as support and software troubleshooting.

¶4        After CCI was audited for the period between June 2002 and May 2006, the Arizona Department of Revenue (the "Department") determined that CCI owed transaction privilege tax in the amount of $82,511.44 plus interest on its income from the software agreements with PNI.   CCI unsuccessfully protested the assessment through the administrative process, arguing that the income from the agreements is deductible under Arizona Revised Statutes ("A.R.S.") section 42-5061(B)(1) (2014),[1] which exempts gross proceeds realized from the sale of machinery or equipment "used directly in manufacturing[.]"

---

[1] Absent material revisions after the relevant dates, we cite the current version of a statute unless otherwise indicated.

¶5        CCI filed an appeal to the tax court and subsequently moved for summary judgment.[2]   After briefing and argument, the tax court determined that "the software, and by extension the maintenance agreements, are exempt under A.R.S. § 42-5061(B)(1)" and granted CCI summary judgment.  The Department then filed this appeal.

## DISCUSSION

¶6        The Department contends the tax court erred by ruling that the gross income CCI earns from the sale of software to PNI is exempt from taxation under § 42-5061(B)(1).  Specifically, the Department argues that: (1) newspaper publishing is not manufacturing; but (2) even if newspaper publishing is manufacturing, the software is not "used directly" in the manufacturing process.

¶7        We review de novo the grant of summary judgment. *Wilderness World, Inc. v. Ariz. Dep't of Revenue*, 182 Ariz. 196, 198, 895 P.2d 108, 110 (1995).  We also review de novo the tax court's construction of statutes.  *Ariz. Dep't of Revenue v. Cent. Newspapers, Inc.*, 222 Ariz. 626, 629, ¶ 9, 218 P.3d 1083, 1086 (App. 2009).

¶8        When reviewing tax statutes, we liberally construe statutes imposing taxes in favor of taxpayers and against the government, but "strictly construe tax exemptions because they violate the policy that all taxpayers should share the common burden of taxation."  *Ariz. Dep't of Revenue v. Capitol Castings, Inc.*, 207 Ariz. 445, 447, ¶ 10, 88 P.3d 159, 161 (2004).  We will not, however, construe an exemption so strictly "as to defeat or destroy the [legislative] intent and purpose."  *Id*. at 447-48, ¶ 10, 88 P.3d at 161-62 (quoting W.E. Shipley, Annotation, *Items or Materials Exempt from Use Tax as Used in Manufacturing, Processing, or the Like*, 30 A.L.R. 2d 1439, 1442 (1953)).

### I.

¶9        Our transaction privilege tax is an "excise tax on the privilege or right to engage in an occupation or business in the State of Arizona."  *Ariz. Dep't of Revenue v. Mountain States Tel. & Tel. Co.*, 113 Ariz. 467, 468,

---

[2] CCI simultaneously filed three motions for partial summary judgment supported by a combined statement of facts.  The first addressed whether a newspaper publisher is a manufacturer; the second addressed whether the CCI software qualifies for the machinery and equipment deduction; and the third motion addressed whether gross receipts from software maintenance agreements are subject to Arizona transaction privilege tax.

556 P.2d 1129, 1130 (1976); *Karbal v. Ariz. Dep't of Revenue*, 215 Ariz. 114, 116, ¶ 10, 158 P.3d 243, 245 (App. 2007). It is not a sales tax, but a tax on the gross receipts of the seller's business activities. *See* A.R.S. § 42–5008; *J.C. Penney Co. v. Ariz. Dep't of Revenue*, 125 Ariz. 469, 472, 610 P.2d 471, 474 (App. 1980) ("The legal incidence of the transaction privilege tax is on the seller[.]").

¶10 There are a number of statutory exemptions to the transaction privilege tax, including an exemption for gross income derived from the sale of machinery or equipment "used directly in manufacturing." A.R.S. § 42-5061(B)(1). Section 42-5061(B)(1) provides that:

> [T]he gross proceeds of sales or gross income derived from sales of the following categories of tangible personal property shall be **deducted** from the tax base:
>
> 1. **Machinery, or equipment, used directly in manufacturing**, processing, fabricating, job printing, refining or metallurgical operations. The terms **"manufacturing"**, "processing", "fabricating", "job printing", "refining" and "metallurgical" as used in this paragraph **refer to and include those operations commonly understood within their ordinary meaning**.

A.R.S. § 42-5061(B)(1) (emphasis added).[3]

¶11 The "machinery and equipment exemption" was created to promote business investment and increase state revenue from income and property taxes. *Capitol Castings*, 207 Ariz. at 448, ¶ 13, 88 P.3d at 162. And § 42-5061(B)(1) furthers that legislative intent. *Id.*

---

[3] Arizona use tax, which is complementary to the transaction privilege tax, is subject to the same exemption for machinery or equipment used directly in manufacturing. *See* A.R.S. § 42-5159(B)(1); *Ariz. Dep't of Revenue v. Care Computer Sys., Inc.*, 197 Ariz. 414, 420, ¶ 25, 4 P.3d 469, 475 (App. 2000) (Fidel, J., dissenting) (explaining that transaction privilege taxes and use taxes are complementary taxes).

## II.

**¶12**      Although the Department contends that CCI is a retailer selling software, including updates and releases,[4] the Department does not dispute that CCI's software is machinery or equipment.[5] *See Capitol Castings*, 207 Ariz. at 450, ¶ 22, 88 P.3d at 164 (determining that a computer used in business is machinery or equipment). However, the Department argues that the statutory exemption does not apply because newspaper publishing is not "manufacturing."

### A.

**¶13**      The term "manufacturing" is not defined, but § 42-5061(B)(1) directs us to apply the "ordinary meaning" of the term. A.R.S. § 42-5061(B)(1). We do so by looking to established and widely used dictionaries. *See Stout v. Taylor*, 233 Ariz. 275, 278, ¶ 12, 311 P.3d 1088, 1091 (App. 2013); *see also Hearst Corp. v. State Dep't of Assessment & Taxation*, 308 A.2d 679, 684 (Md. 1973) (stating "[m]anufacture as used in those statutes is a plain word in everyday use, and as ordinarily understood . . . ."). For example, the Oxford dictionary defines "manufacture" as to "[m]ake (something) on a large scale using machinery." http://www.oxforddictionaries.com/us/definition/english/manufacture (last visited February 26, 2015). The online Merriam-Webster dictionary defines "manufacture" as "the process of making products especially with

---

[4] The Department recognizes that CCI's support and troubleshooting services, standing alone, are not "tangible personal property" and would not be subject to transaction privilege tax. However, because CCI did not separate its receipts from support and troubleshooting from its receipts from the software updates and releases, the Department assessed transaction privilege taxes on all the fees PNI paid CCI under the software agreements. *See* A.R.S. § 42-5061(G) (permitting the application of the transaction privilege tax to both goods and services if the taxpayer does not separate the income attributable to each on its books).

[5] The parties also agree that if CCI's software is deductible as machinery or equipment used directly in manufacturing, then the software updates and releases provided pursuant to the software maintenance agreements are likewise deductible pursuant to Arizona Administrative Code ("A.A.C.") R15-5-120(B), which exempts gross receipts from the "sale of repair or replacement parts for exempt machinery or equipment." A.A.C. R15-5-120(B).

machines in factories." http://www.merriam-webster.com/dictionary/manufacture (last visited March 4, 2015).

¶14 PNI uses printing presses and other machinery daily to produce large numbers of printed newspapers. The process to create a printed newspaper is described in the record as follows:

> Paper is wound through the printing presses prior to hanging the plates, and once the plates are attached, the presses are started, and they apply ink and water to the plates. The paper winds through the presses and culminates at a piece of equipment called the "folder," which takes in all the pages, cuts them, folds them into completed newspapers or sections of newspapers, and drops them onto a conveyor system.

Unlike "[p]rinting a newspaper on a hand-operated flat-bed press in the 18th or 19th century [which was] simply the dissemination of information," *Hearst Corp.*, 308 A.2d at 688, "[t]he equipment used in printing a newspaper has become much more sophisticated and more fully automated." *Id.* at 680.

¶15 During the audit period, PNI was producing approximately 3,450,000 copies of the *Arizona Republic* a week. PNI weekly used approximately 4,387,835 pounds of newsprint, 65,568 pounds of ink, 63 rolls of strapping, and 54 rolls of packaging. Raw materials are used and printed newspapers are the result of the manufacturing process.

**B.**

¶16 The ordinary dictionary meaning of manufacturing is also consistent with regulations used by the Department. In the Arizona Administrative Code, "manufacturing" is defined as "the performance as a business of an integrated series of operations which place tangible personal property in a form, composition, or character different from that in which it was acquired and transforms it into a different product with a distinctive name, character, or use." A.A.C. R15-5-120. Moreover, the regulations define "publisher" as "one who **manufactures** and distributes a publication from a point within this state." A.A.C. R15-5-1303(A) (emphasis added).

¶17        The administrative regulatory definitions support the decision that PNI engages in "manufacturing" by producing the printed version of the *Arizona Republic*.  Specifically, and using CCI's software, PNI performs an integrated set of operations, to wit:  (1) PNI designs, formats, lays out, and typesets all content, including articles, editorials, photographs, graphics, and advertisements to create newspaper pages; and (2) PNI prints newspapers through a mechanized process using newsprint, ink, and other materials to produce printed newspapers.   The transformation of newsprint and ink into a different product with a distinctive name, character, and use — namely, the printed version of the *Arizona Republic* — is a manufacturing process.

¶18        Moreover, in 1984, twenty years before *Capitol Castings*, PNI asked the Department about the taxability of certain machinery and equipment it had purchased.  By letter, the Department  advised PNI that the listed items of machinery and equipment, including "[c]omputer systems and parts directly related to [the] production process" would be exempt from taxation if "used directly in the printing operation" of the *Arizona Republic*.  The letter has never been rescinded, and, as a result, constitutes an acknowledgement that printed newspaper production is "manufacturing."[6]   Consequently, based on the ordinary meaning of the term "manufacturing," PNI is engaged in manufacturing when it produces the printed version of the *Arizona Republic*.[7]

## III.

¶19        The Department also contends that, even if newspaper publishing is manufacturing, the sale of CCI's software, and the software updates and releases, is still taxable because the software is not "used directly" in manufacturing.  CCI argues that the software is "used directly" in manufacturing the newspaper because it is essential to the completion of

---

[6] The Department also argues that if the Legislature had intended to exempt newspaper printing, it would have listed "publishing" in the list of deductible activities as it listed "job printing."  *See* A.R.S. § 42-5061(B)(1).  Because the production of a printed newspaper is manufacturing, the Legislature did not need to list "publishing" separately.  Moreover, because "publishing" is not separately enumerated in A.R.S. § 42-5061(B)(1), the exemption does not apply to the non-manufacturing aspects of publishing.
[7] The Arizona Board of Tax Appeals has determined that computer hardware and software utilized in newspaper publication qualifies for the machinery and equipment exemption.  *See New Times, Inc. v. Ariz. Dep't of Revenue,* 1993 WL 261253 (Ariz. Bd. Tax Appeals).

the finished product and operates with PNI's printing equipment as part of an integrated system.

¶20      To determine whether an item qualifies as machinery or equipment used directly in manufacturing, our supreme court directed that:

> [A] court should examine the nature of the item and its role in the operations. Items essential or necessary to the completion of the finished product are more likely to be exempt. The prominence of an item's role in maintaining a harmonious "integrated synchronized system" with the indisputably exempt items will also directly correlate with the likelihood that the exemption applies. The closer the nexus between the item at issue and the process of converting raw materials into finished products, the more likely the item will be exempt. As part of its analysis, the court should consider whether the item physically touches the raw materials or work in process, whether the item manipulates or affects the raw materials or work in process, or whether the item adds value to the raw materials or work in process as opposed to simply reducing costs or relating to post-production activities.

*Capitol Castings*, 207 Ariz. at 451, ¶ 25, 88 P.3d at 165 (citations omitted). The court, however, cautioned that "[t]hroughout its analysis, a court must bear in mind that the goal of the exemption — promoting economic development — must not be frustrated by too narrow an application of [the statutory exemption]." *Id*.

¶21      The CCI software is essential and necessary to the completion of the finished printed *Arizona Republic* newspaper. The software performs the layout, formatting, and typesetting functions necessary to create the printed newspaper pages. The software assigns a naming convention that controls the flow of each page through the production and printing process. The software manipulates words, photographs, advertising and graphics onto the printed pages. PNI takes the product produced with the CCI software and, with other software, hardware and raw materials, uses a mechanical process to manufacture the printed newspaper. As a result, the

software, including the updates and releases, is integral to the manufacturing of the paper and are deductible under § 42-5061(B)(1). *See Concord Publishing House, Inc. v. Dir. of Rev.*, 916 S.W.2d 186, 190 (Mo. 1996) (noting that newspaper publication involves the mechanical processing of words and pictures and manufacturing occurs as those works are fixed onto a printed page).

**IV.**

¶22 CCI requests an award of attorneys' fees pursuant to A.R.S. § 12-348(B), which permits an award of fees to a party prevailing in an action against the State for the assessment or collection of taxes. We grant CCI's request for an award of reasonable attorneys' fees and costs incurred on appeal upon compliance with ARCAP 21.

**CONCLUSION**

¶23 For the foregoing reasons, we affirm the judgment.



Ruth A. Willingham · Clerk of the Court
FILED: ama