IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

CHEVRON U.S.A. INC., a Pennsylvania corporation,
*Plaintiff/Appellant*,

*v.*

ARIZONA DEPARTMENT OF REVENUE, an agency of the State of
Arizona, *Defendant/Appellee*.

No. 1 CA-TX 14-0013
FILED 12-3-2015

Appeal from Arizona Tax Court
No. TX2011-001038
The Honorable Dean M. Fink, Judge
The Honorable Christopher T. Whitten, Judge

**REVERSED AND REMANDED**

COUNSEL

Gallagher & Kennedy, PA, Phoenix
By Mark A. Fuller
*Co-Counsel for Plaintiff/Appellant*

Cavanagh Law Firm, Phoenix
By James G. Busby, Jr.
*Co-Counsel for Plaintiff/Appellant*

Arizona Attorney General's Office, Phoenix
By Jerry A. Fries
*Counsel for Defendant/Appellee*

Snell & Wilmer, LLP, Phoenix
By Craig R. McPike and Robert I. Schwimmer
*Co-Counsel for Amicus Curiae Arizona Tax Research Association,*
*Arizona Chamber of Commerce and Industry, Arizona*
*Manufacturers Council, and Arizona Mining Association*

Fennemore Craig, PC, Phoenix
By Patrick Irvine
*Co-Counsel for Amicus Curiae Arizona Tax Research Association,*
*Arizona Chamber of Commerce and Industry, Arizona*
*Manufacturers Council, and Arizona Mining Association*

---

## OPINION

Presiding Judge Donn Kessler delivered the opinion of the Court, in which Chief Judge Michael J. Brown and Judge Andrew W. Gould joined.

---

**K E S S L E R**, Judge:

**¶1**      Chevron U.S.A., Inc. appeals from the tax court's entry of summary judgment in favor of the Arizona Department of Revenue. We hold that the industrial oils and greases used in mining and metallurgical operations involved in this case are exempt from the transaction privilege tax. Accordingly, we reverse the decision of the tax court and remand for entry of summary judgment in favor of Chevron.

### FACTUAL AND PROCEDURAL HISTORY

**¶2**      This case involves the application of Arizona's transaction privilege tax to Chevron's sale of oils and greases to Freeport-McMoRan, Inc. for use in its mining and metallurgical operations. Freeport uses the oils and greases in conjunction with its machinery and equipment.

**¶3**      Chevron filed a refund claim for $324,233.79 in taxes paid between July 2002 and March 2006 on products sold to Freeport. Chevron asserted that the sales of oils and greases are exempt from the transaction privilege tax under Arizona Revised Statutes ("A.R.S.") sections 42-

2

5061(B)(1), (2), (18) (Supp. 2015),[1] which exempt machinery and equipment used in mining or metallurgical operations and for machinery and equipment used to prevent or reduce pollution arising from such operations.

**¶4**        In response, the Department granted Chevron a refund of $8,357.26 for taxes paid on the sale of hydraulic oils and transmission fluids only. The Department denied the remainder of Chevron's refund claim pertaining to engine oil, gear oil, grease, and open gear lube.

**¶5**        After exhausting its administrative remedies, Chevron filed a complaint in tax court pursuant to A.R.S. § 42-1254(C) (2013). The parties filed cross-motions for summary judgment, and the court granted summary judgment in favor of the Department. Chevron timely appealed, and we have jurisdiction pursuant to A.R.S. § 12-2101(A)(1) (Supp. 2015).

## DISCUSSION

**¶6**        "We review *de novo* the tax court's grant[] of summary judgment to the Department." *See Ariz. Dep't of Revenue v. Salt River Project Agric. Improvement and Power Dist.*, 212 Ariz. 35, 38, ¶ 13 (App. 2006). We also review de novo the tax court's interpretation of A.R.S. § 42-5061, the statute at issue in this case. *See State ex rel. Ariz. Dep't of Revenue v. Capitol Castings, Inc.*, 207 Ariz. 445, 447, ¶ 9 (2004). Because Chevron seeks an exemption from the transaction privilege tax, we apply the general rule that "laws exempting property from taxation are to be strictly construed; the presumption being against such exemption." *Tucson Transit Auth., Inc. v. Nelson*, 107 Ariz. 246, 252 (1971). At the same time, we acknowledge our supreme court's guidance that exemptions should "not be so strictly construed as to defeat or destroy the [legislative] intent and purpose." *Capitol Castings*, 207 Ariz. at 447-48, ¶ 10 (alteration in original) (quoting W.E. Shipley, Annotation, *Items or Materials Exempt from Use Tax as Used in Manufacturing, Processing, or the Like*, 30 A.L.R.2d 1439, 1442 (1953)). Applying these standards, we consider whether the industrial oils and greases at issue in this case are exempt under A.R.S. § 42-5061(B)(1),(2), (18).

**¶7**        Arizona's transaction privilege tax is "an excise tax on the privilege or right to engage in an occupation or business in the State of Arizona." *Ariz. Dep't of Revenue v. Mountain States Tel. and Tel. Co.*, 113 Ariz.

---

[1] We cite the current version of the applicable statute unless revisions material to this decision have occurred since the events in question.

467, 468 (1976).  The retail classification imposes a tax on the gross proceeds of sales or the gross income derived from the "business of selling tangible personal property at retail."  A.R.S. § 42-5061(A).

**¶8**        The legislature has carved out numerous exemptions to the retail transaction privilege tax.  *See* A.R.S. § 42-5061.  The exemptions at issue in this case are for:  (1) machinery or equipment used directly in manufacturing or metallurgical operations; (2) mining machinery or equipment; and (3) machinery or equipment used directly to meet or exceed pollution control regulations.[2]  *See* A.R.S. § 42-5061(B)(1), (2), (18).

## I.        Legislative Intent

**¶9**        This Court's primary goal in "interpreting a statute is to discern and give effect to legislative intent."  *People's Choice TV Corp. v. City of Tucson*, 202 Ariz. 401, 403, ¶ 7 (2002).  "[B]ecause a statute's plain language provides the best evidence of intent," *Martineau v. Maricopa Cty.*, 207 Ariz. 332, 334, ¶ 9 (App. 2004), we begin our analysis with the plain language of A.R.S. § 42-5061.

**¶10**        Section 42-5061(B)(2) exempts  from the transaction privilege tax proceeds from the sale of:

> Mining machinery, or equipment, used directly in the process of extracting ores or minerals from the earth for commercial purposes, including equipment required to prepare the materials for extraction and handling, loading or transporting such extracted material to the surface.

Subsections (B)(1) and (B)(18) provide similar exemptions for machinery and equipment used in metallurgical operations and for pollution control equipment used in mining and metallurgical operations.  Chevron argues that these exemptions apply to the industrial greases and oils at issue here.

**¶11**        Although the Department concedes that Freeport's mining machinery and equipment are exempt from transaction privilege tax**,** it argues that the greases and oils required by that machinery and equipment are taxable because they are "expendable materials" that are used up "in minutes, days or months in mining operations."  Pursuant to § 42-

---

[2] The legislature provided a corresponding use tax exemption for these types of machinery and equipment.  *See* A.R.S. § 42-5159(B)(1), (2), (18) (Supp. 2015).

5061(C)(1), "expendable materials" are taxable but only if they do not otherwise qualify for one of the exemptions set forth in subsection B:

> The deductions provided by subsection B of this section do not include sales of: 1. Expendable materials. *For the purposes of this paragraph, expendable materials do not include any of the categories of tangible personal property specified in subsection B of this section regardless of the cost or useful life of that property.*

(Emphasis added.)

**¶12** The legislature added the above-italicized portion of subsection (C)(1) in 1999.[3] *See* 1999 Ariz. Sess. Laws, ch. 153, § 1 (1st Reg. Sess.). In doing so, the legislature intentionally expanded the scope of the subsection (B) exemptions to include expendable materials "regardless of the cost or useful life of the property" so long as "the tangible personal property would otherwise be exempt under the transaction privilege and use tax."[4] Senate Fact Sheet for H.B. 2395 (Feb. 18, 1999). As a result of this statutory amendment, the useful life of property no longer determines whether it is exempt from tax. *See* House Abstract for H.B. 2395 (Jan. 26, 1999).

**¶13** In light of the 1999 amendment to A.R.S. § 42-5061(C)(1), the proper inquiry in this case is not whether the greases and oils are consumed or used up in Freeport's operations, but rather whether they qualify for the exemptions set forth in A.R.S. § 42-5061(B)(1), (2), or (18). If the oils and greases qualify as machinery or equipment used directly in Freeport's mining and metallurgical activities, they are exempt.

---

[3] The legislature simultaneously amended the corresponding use tax exemption, A.R.S. § 42-5159(C)(1). *See* 1999 Ariz. Sess. Laws, ch. 153, § 2 (1st Reg. Sess.).

[4] Our supreme court's decision in *Capitol Castings* traces the history of this legislative amendment and explains that the legislature intended to overrule an earlier decision by this court and remove an item's expendability "as an impediment to qualification" for the exemption. 207 Ariz. at 449, ¶ 18.

## II.   *Capitol Castings*

**¶14**          Five years after the legislature amended subsection (C)(1) of A.R.S. §§ 42-5061 and 42-5159, our supreme court applied the amended use tax statute in *Capitol Castings*.[5]  In *Capitol Castings*, the court adopted a "more expansive definition of machinery or equipment" by applying "flexible and commonly used definitions" of those terms.  207 Ariz. at 450-51, ¶ 24.  In applying these definitions, the supreme court instructed lower courts to:

> [E]xamine the nature of the item and its role in the operations. Items essential or necessary to the completion of the finished product are more likely to be exempt.  The prominence of an item's role in maintaining a harmonious "integrated synchronized system" with the indisputably exempt items will also directly correlate with the likelihood that the exemption applies.

*Id.* at 451, ¶ 25 (citing *Duval Sierrita Corp. v. Ariz. Dep't of Revenue*, 116 Ariz. 200, 205-07 (App. 1977)).[6]  The supreme court explained that whether an item is exempt from the transaction privilege tax should be determined not

---

[5] In *Capitol Castings*, the court applied the use tax statute, A.R.S. § 42-5159(B)(1).  207 Ariz. at 448, ¶ 11.  The language of the transaction privilege tax statute, A.R.S. § 42-5061(B)(1), is identical.

[6] In *Capitol Castings*, the supreme court concluded that the legislature, in amending the transaction privilege tax and use tax statutes, had embraced the "integrated rule" test announced by this court in *Duval Sierrita*.  207 Ariz. at 450, ¶¶ 23-24.  Pursuant to that test:

> [T]he boundaries of the exempt operation must be drawn taking into consideration the entire operation as it is "commonly understood" which operation must, of necessity, include those items which are essential to its operation and which make it an *integrated system*.

*Duval Sierrita*, 116 Ariz. at 206 (emphasis added).  In *Capitol Castings*, the supreme court characterized the "*Duval Sierrita* approaches" as allowing "items that would not ordinarily be considered 'machinery' or 'equipment' to qualify for the . . . exemption if they function as a necessary part of an integrated process."  207 Ariz. at 450, ¶ 21.

by the material it is made from (metal or non-metal) but rather by the function it performs. *Capitol Castings*, 207 Ariz. at 451 n.4, ¶ 25. Thus, we look to see if the item is essential or necessary to the completion of the finished product and whether it maintains a harmonious "integrated synchronized system" with the indisputably exempt items regardless of whether the item is a viscous liquid or a solid item. If that test is met, the item is exempt from the tax.

**¶15** Applying this reasoning, the supreme court determined that a variety of materials utilized by Capitol Castings in its manufacturing operations were exempt. *Id*. at ¶ 26. Of particular note, the supreme court found that "mold wash," a substance sprayed on the mold to prevent the sand from sticking to the casting, was exempt. *Id.* at 447, ¶ 3, 451, ¶ 26. Likewise, the court found that hot topping, a powder employed to keep the molten metal from cooling, was exempt. *Id.*

**¶16** In concluding that such items were exempt from taxation, the supreme court emphasized the purpose of the machinery and equipment exemptions, which is to "stimulate business investment in Arizona in order to improve the state's economy and increase revenue from other taxes, such as income and property taxes." *Id*. at 448, ¶ 13. The court advised that our interpretation of the exemptions "should further, not frustrate, the policy of encouraging investment and spurring economic development." *Id.*; *see also CCI Europe, Inc. v. Ariz. Dep't of Revenue*, 237 Ariz. 50, 54-55, ¶ 20 (App. 2015) (emphasizing the purpose of the machinery and equipment exemption).

**¶17** Following the guidance of our supreme court in *Capitol Castings*, we begin our examination of Chevron's oils and greases by reference to commonly used definitions of "equipment."[7] As referenced by the court in *Capitol Castings*, Webster's College Dictionary defines equipment to include "the articles, implements, etc., used or needed for a specific purpose or activity." 207 Ariz. at 448, ¶ 12 (quoting Webster's College Dictionary 442 (2d ed. 1997)). The online Merriam-Webster dictionary similarly defines equipment to include "supplies or tools needed for a special purpose." Merriam-Webster online dictionary,

---

[7] We agree with the argument made by the Arizona Tax Research Association in its amicus brief that the oils and greases constitute equipment rather than machinery.

http://www.merriam-webster.com/dictionary/equipment (last visited Nov. 12, 2015).

¶18     The oils and greases at issue here function to reduce friction, disperse heat, and suspend contaminants. They also create hydrodynamic pressure, which "cushions loads on components in various systems." They enable the machinery to function. We conclude that the oils and greases satisfy the commonly used definitions of "equipment" because they are articles, implements, and supplies needed by Freeport in its mining and metallurgical activities.

¶19     Next, we analyze the nature of Chevron's oils and greases and the role they play in Freeport's mining and metallurgical operations by reference to the evidence presented to the tax court. Chevron's expert explained that the oils and greases function to "maintain the separation of two surfaces in relative motion when loads, speeds, and temperature conspire to induce metal to metal contact." He further testified that the oils and greases perform the following functions: "dissipation of heat, occlusion and suspension of contaminants." A Freeport employee, who submitted a declaration supporting Chevron's motion for summary judgment, explained:

> Without these products, the machinery (and the systems within the machinery) would not function. They are as essential as any other component of Freeport's machinery and equipment, and are a critical, integral part of the machinery. In other words, the oils and greases are not used solely to protect or extend the life of the machinery – although that is obviously a critical function in and of itself – but to make it operable in the first place.

Furthermore, as stated in Chevron's statement of facts, "given the size and weight of the machinery, it must be transported with these products in place. Otherwise, much of it would simply collapse on itself." *See Sato v. Van Denburgh*, 123 Ariz. 225, 228 (1979) (affirming that if a party fails to controvert the moving party's statement of facts in a motion for summary judgment, the moving party's facts may be considered true).

¶20        The Department did not controvert this evidence.[8]  Indeed, the Department concedes that the oils and greases are essential to Freeport's mining and metallurgical activities and that they are "used directly" in those operations.  Nevertheless, the Department argues that the oils and greases do not qualify for the exemption because they are "not the functional equivalent of machinery and equipment."  We disagree.

¶21        In *Capitol Castings*, our supreme court concluded that:

> [S]ilica sand, chemical binders, exothermic sleeves, mold cores, mold wash, and hot topping qualify for the exemption because they were used directly in and were an integral part of a qualifying process under A.R.S. § 42–5159(B)(1). The items functioned the way machinery or equipment might in an integrated, synchronized system within the industry.

207 Ariz. at 451, ¶ 26.  Similarly, Chevron's oils and greases are "used directly in" and are "an integral part of" Freeport's mining and metallurgical operations.  Moreover, based on the uncontroverted evidence, we conclude that the oils and greases function as equipment in Freeport's operations.  Accordingly, under the supreme court's holding in *Capitol Castings*, the oils and greases are exempt from taxation under A.R.S. § 42-5061(B)(1), (2), (18).[9]

¶22        Our conclusion is consistent with the Department's policy relating to the statutory exemption from transaction privilege tax for lessors of motor vehicles subject to the motor carrier fee.  *See* Transaction Privilege Tax Ruling TPR 2003-2, 2003 WL 23178083 (Ariz. Bd. Tax App. Dec. 4, 2003).

---

[8] Chevron submitted two declarations in support of its motion for summary judgment that described the function of the oils and greases in Freeport's operations.  The first was signed by James Taylor, a Freeport employee.  The second was signed by Paul Bessette, Chevron's expert.  The Department disputed only limited portions of Mr. Taylor's declaration.

[9] The tax court relied on the fact that "[t]he oils and greases do not touch the raw materials or work in progress" in concluding that "they play no direct part in the completion of the finished product."  Although the supreme court indicated in *Capitol Castings* that a "court should consider whether the item physically touches the raw materials or work in process," such a determination is not dispositive.  207 Ariz. at 451, ¶ 25.

In TPR 2003-2, the Department declared that "[a]lthough items such as antifreeze, motor oil, transmission fluid, bearing grease and windshield washer solution may be replaced with frequency, they are, nevertheless, a part of the vehicle, and therefore, qualify for exemption" pursuant to A.R.S. § 42-5061(A)(41).[10]  The same logic applies to the oils and greases that Freeport utilizes in its mining operations.

**¶23**        Chevron contends that the issue before this Court "is purely one of law, on an undisputed factual record."  We agree.  "[W]here the issues can be decided as a matter of law, we have the authority both to vacate the trial court's grant of summary judgment in favor of one party and to enter summary judgment for the other party if appropriate."  *See Anderson v. Country Life Ins. Co.*, 180 Ariz. 625, 628 (App. 1994).

**CONCLUSION**

**¶24**        For the foregoing reasons, we reverse summary judgment in favor of the Department and direct entry of judgment for Chevron on remand.  Chevron requests attorneys' fees and expenses pursuant to A.R.S. § 12-348(B)(1) (Supp. 2015).  Under A.R.S. § 12–348(B)(1), courts may award fees and expenses to taxpayers who successfully challenge the denial of a tax refund.  In the exercise of our discretion, we award Chevron its reasonable attorneys' fees and expenses incurred on appeal upon compliance with Arizona Rule of Civil Appellate Procedure 21 and A.R.S. § 12–348(E).



Ruth A. Willingham · Clerk of the Court
FILED : ama

---

[10] At the time the Department issued TPR 2003-2, this exemption was found at A.R.S. § 42-5061(A)(42).