THOMPSON, Presiding Judge:
¶ 1 The Arizona Department of Revenue (Department) appeals from the tax court's grant of summary judgment in favor of Empire Southwest LLC (Empire). Because we conclude that the sale of Empire's fuel truck was exempt from transaction privilege tax, we affirm.
FACTUAL AND PROCEDURAL HISTORY
¶ 2 The facts in this case are undisputed. Empire is an equipment retailer operating in Arizona. In 2014, Empire sold a modified Caterpillar 777G WT truck (the Truck) to the Pinto Valley Mine (the Mine) for use in its open pit copper mining operation. Pinto uses the Truck to transport fuel and lubricants from the Mine rim to equipment located in the pit.
¶ 3 Empire added $121,777.68 in transaction privilege tax to the Truck's purchase price, but Pinto refused to pay the tax claiming the Truck was exempt from tax pursuant to Arizona Revised Statutes (A.R.S.) section 42-5061(B)(2) (2018), which exempts equipment used directly in the process of extracting ores or minerals from the earth. Empire paid the tax itself and, thereafter, sought a refund, which the Department denied.
¶ 4 After an unsuccessful administrative appeal, Empire filed a complaint in tax court. The parties filed cross-motions for summary judgment. The tax court granted Empire's motion and denied the Department's motion finding that the Truck qualified for the tax exemption. The Department timely appealed, and we have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1) and -170(C) (2016).
LEGAL DISCUSSION
¶ 5 The sole issue on appeal is whether the Truck is exempt from transaction privilege tax pursuant to A.R.S. § 42-5061(B)(2). We review this issue of statutory interpretation de novo . See Chevron U.S.A. Inc. v. Ariz. Dep't of Revenue , 238 Ariz. 519, 520, ¶ 6, 363 P.3d 136, 137 (App. 2015). Because A.R.S. § 42-5061(B) creates a tax exemption, we strictly construe this provision and acknowledge a presumption against the exemption. See id. We will not, however, construe the exemption so strictly "as to defeat or destroy the [legislative] intent and purpose." State ex rel. Ariz. Dep't of Revenue v. Capitol Castings, Inc. , 207 Ariz. 445, 447, ¶ 10, 88 P.3d 159, 161 (2004) (citation omitted).
¶ 6 The Arizona transaction privilege tax is an excise tax on the privilege of conducting business within the state. See Ariz. Dep't of Revenue v. Mountain States Tel. & Tel. Co ., 113 Ariz. 467, 468, 556 P.2d 1129, 1130 (1976). The retail classification imposes a tax on the gross proceeds or income derived from "the business of selling tangible *1084 personal property at retail." A.R.S. § 42-5061(A).
¶ 7 There are numerous exemptions to the retail transaction privilege tax, including the one at issue here, which permits taxpayers to deduct from their tax base:
Mining machinery, or equipment, used directly in the process of extracting ores or minerals from the earth for commercial purposes, including equipment required to prepare the materials for extraction and handling, loading or transporting such extracted material to the surface.
A.R.S. § 42-5061(B)(2) (emphasis added). As this court has previously explained, the legislative purpose of this exemption was "to encourage mining in this state so that the end product of that mining and metallurgical activity (sales of copper ) is itself subject to taxation under the transaction privilege tax." Duval Sierrita Corp. v. Ariz. Dep't of Revenue , 116 Ariz. 200, 204, 568 P.2d 1098, 1102 (App. 1977) (citations omitted). The issue we must decide is whether the Truck was "used directly in the process of extracting ores or minerals from the earth." A.R.S. § 42-5061(B)(2).
¶ 8 Both parties have identified three Arizona cases to guide us in determining whether the Truck is "used directly" in the mining process. First, in Duval Sierrita , this court applied the use tax exemption applying to machinery or equipment used directly in mining and metallurgical operations.[1] See Duval Sierrita, 116 Ariz. at 201, 568 P.2d at 1099 (applying A.R.S. § 42-1409(B)(1)-(2), since re-codified as § 42-5159(B)(1)-(2) (2018) ). The court determined that the following items were exempt from use tax: (1) spare and replacement parts for machinery and equipment, (2) a conveyor belt used to transport ore between crushers, (3) steel pipes used to transport slurry from the mill to flotation tanks, and (4) booster pumps needed to transport water to the mill. See id . at 205-06, 568 P.2d at 1103-04. In doing so, the court adopted the "integrated rule" test utilized by other jurisdictions. Id. at 205, 568 P.2d at 1103. Under the integrated rule test, a court must answer three questions:
(1) Is the disputed item necessary to production?
(2) How close, physically and causally, is the disputed item to the finished product?
(3) Does the disputed item operate harmoniously with the admittedly exempt machinery to make an integrated synchronized system?
Id . (citations omitted).
¶ 9 Twenty-seven years later, in Capitol Castings , our supreme court explained that the Arizona Legislature had embraced the holding from Duval Sierrita and the integrated rule test set forth therein. See Capitol Castings, 207 Ariz. at 449-50, ¶¶ 20, 23, 88 P.3d at 163-64. Applying the integrated rule test, the court determined that various items utilized by Capitol Castings, a company that manufactured grinding balls and custom-cast items for mining, were exempt from tax "because they were used directly in and were an integral part of a qualifying process." Id . at 451, ¶ 26, 88 P.3d at 165 (applying A.R.S. § 42-5159(B)(1) ). The exempt items included silica sand, chemical binders, exothermic sleeves, mold cores, mold wash, and hot topping. See id. Conversely, the court determined that cement and lime were not exempt because they "served the ancillary purpose of pollution control and therefore were not as integrally related to the process." Id .
¶ 10 The Capitol Castings court further explained that under the "integrated rule" test:
Items essential or necessary to the completion of the finished product are more likely to be exempt. The prominence of an item's role in maintaining a harmonious "integrated synchronized system" with the indisputably exempt items will also directly correlate with the likelihood that the exemption applies. The closer the nexus between the item at issue and the process of converting raw materials into finished products, the more likely the item will be exempt.
Id. at 451, ¶ 25, 88 P.3d at 165 (citing *1085 Duval Sierrita, 116 Ariz. at 205-07, 568 P.2d at 1103-05 ). More recently, in Chevron , this court applied A.R.S. § 42-5061(B)(2) to conclude that "industrial oils and greases used in mining and metallurgical operations ... are exempt from the transaction privilege tax."[2] Chevron, 238 Ariz. at 520, ¶ 1, 363 P.3d at 137.
¶ 11 Here, the Department argues the Truck is not used directly in the process of extracting ore from the earth. Rather, the Department describes the Truck's use as fulfilling "the ancillary support or maintenance role of transporting fuel and lubricants to the exempt mining equipment." Following the lead of our supreme court in Capitol Castings , we apply the "integrated rule" test to evaluate the Department's contention. In doing so, we answer the three questions identified in Duval Sierrita . See Duval Sierrita, 116 Ariz. at 205, 568 P.2d at 1103.
¶ 12 First, the Truck is necessary to the Mine's production. See id. As explained in Empire's statement of facts below, the Truck transports fuel and lubricants from the pit rim to equipment located several hundred feet below, including shovels, drills, bulldozers, and front-end loaders. The drills and shovels require refueling every twelve hours of operation. The shovel would lose eight hours of production time if it had to be moved from the pit floor to the pit rim for refueling. Likewise, the drill would lose four hours of production time. Thus, by servicing the mining equipment in the pit, the Truck permits the equipment to operate twenty-four hours per day.
¶ 13 Second, the Truck is close, physically and causally, to the ore. See id. The Truck comes near the ore when it services the equipment in the pit. Moreover, the function of the Truck is causally related to the efficient extraction of the ore from the ground.
¶ 14 Third and finally, the Truck operates harmoniously with the admittedly exempt drills, shovels, loaders, and dozers as part of an integrated synchronized system. See id. As reflected in the record, the Truck "continuously services all of the Pit Equipment to keep it operating 24 hours per day." The Department itself agreed that "[w]ithout the Truck, the need to take the equipment to fueling and lubricating stations would result in significant periods of stoppage and severely limit copper production."
¶ 15 On appeal, the Department argues that the Truck "does not perform extraction activities as defined in the statute but instead supports the extraction equipment." In Duval Sierrita , this court found that steel pipes that transported slurry from the mill to the flotation tanks were used directly in copper mining. See Duval Sierrita , 116 Ariz. at 206, 568 P.2d at 1104. Likewise, the court found that booster pumps needed to transport water to the mill were exempt. See id. The Truck here performs a function similar to those pipes and pumps by transporting essential fuel and lubricants to the mining equipment.
¶ 16 After application of the integrated rule test, we conclude that the Truck is used directly in the process of extracting ore from the earth. Accordingly, the Truck is exempt from transaction privilege tax pursuant to A.R.S. § 42-5061(B)(2).[3]
CONCLUSION
¶ 17 For the foregoing reasons, we affirm the decision of the tax court. Empire requests its attorneys' fees on appeal pursuant to A.R.S. § 12-348 (2017), which authorizes us to award attorneys' fees to parties who bring an action challenging the assessment, collection, or refund of taxes. See A.R.S. § 12-348(B)(1). In the exercise of that discretion, we award Empire its reasonable attorneys' fees and costs on appeal subject to the limitation imposed by A.R.S. § 12-348(E)
*1086 and upon compliance with Arizona Rule of Civil Appellate Procedure 21.

Arizona's use tax is complementary to the transaction privilege tax. See Ariz. Dep't of Revenue v. Care Comp. Sys., Inc. , 197 Ariz. 414, 420, ¶ 25, 4 P.3d 469, 475 (App. 2000).

Notably, in Chevron , the Department conceded that the oils and greases were "used directly" in Freeport's mining and metallurgical operations. See Chevron, 238 Ariz. at 523, ¶ 20, 363 P.3d at 140.

Empire requested that this court take judicial notice of certain Gila County Treasurer records reflecting property taxes paid by the Pinto Valley Mining Group. See Ariz. R. Evid. 201. Because we find these records unnecessary to our resolution of this appeal, we deny Empire's request. See Freeport McMoRan Corp. v. Langley Eden Farms, LLC , 228 Ariz. 474, 478, ¶ 15, 268 P.3d 1131, 1135 (App. 2011) ("[W]e do not ... decide unnecessary issues.").